**STATE RESOURCES CORP.,**
**Appellant,**

v.

**LAWYERS TITLE INSURANCE CORP., et al, Respondents.**

No. 27595.

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 27, 2007.

Motion for Rehearing or Transfer
Denied April 4, 2007.

Application for Transfer Denied
June 26, 2007.

Thomas J. Fritzlen, Jr., Kansas City, for appellant.

Ronald N. Sweet, Columbia, for respondents Chalfant & Tompkins.

Gail L. Fredrick, Springfield, for respondent Evans.

ROBERT S. BARNEY, Judge.

Appellant State Resources Corporation ("SRC") appeals the trial court's judgment in favor of Respondents Evans Financial Services d/b/a Evans Land Title ("Evans") and Chalfant and Tompkins Title Insurance Corporation ("Chalfant") arising out of Evans's and Chalfant's purported failure to file a deed of trust in Camden County.[1] In this connection, SRC asserts three points of trial court error, discussed below. We affirm.

■ The standard of review in a court-tried civil case is set out in *Murphy v.*

*Carron,* 536 S.W.2d 30 (Mo. banc 1976). We affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* at 32. " 'Substantial evidence is that which, if true, has probative force upon the issues, and from which the trier of fact can reasonably decide the case.' " *Jerry Bennett Masonry, Inc. v. Crossland Const. Co., Inc.,* 171 S.W.3d 81, 88 (Mo.App.2005) (quoting *Kenney v. Wal-Mart Stores, Inc.,* 100 S.W.3d 809, 814 (Mo. banc 2003)). "The weight of the evidence is determined by its effect in inducing belief." *Jerry Bennett Masonry, Inc.,* 171 S.W.3d at 88. "A judgment should be set aside as being against the weight of the evidence only with caution and with a firm belief that the judgment is wrong." *Id.*

" 'Trial judges are better able than appellate courts to assess the credibility of the parties and other intangibles that are not completely revealed by the record on appeal.' " *Bowles v. All Counties Inv. Corp.,* 46 S.W.3d 636, 638–39 (Mo.App. 2001) (quoting *Kerr v. Louderback,* 35 S.W.3d 511, 513 (Mo.App.2001)). Accordingly, this Court accepts " 'as true the evidence and inferences therefrom that support the trial court's judgment and disregard contrary evidence.' " *Vaughn v. Willard,* 37 S.W.3d 413, 415 (Mo.App.2001) (quoting *Rone v. Reeves,* 20 S.W.3d 526, 527 (Mo.App.2000)). " 'We keep in mind that a trial court is free to believe or disbelieve all, part, or none of the testimony of any witness.' " *Vaughn,* 37 S.W.3d at 415 (quoting *Crawford v. Detring,* 965 S.W.2d 188, 189 (Mo.App.1998)). " 'The trial court's judgment is presumed valid and the burden is on the appellant to demonstrate its incorrectness.' " *Bowles,*

---

1. Respondent Lawyer's Title Insurance Corporation ("LTIC") was granted a directed verdict in this matter by the trial court and does not appear in this appeal.

46 S.W.3d at 638 (quoting *Schaefer v. Rivers,* 965 S.W.2d 954, 956 (Mo.App.1998)). Although this Court defers to the trial court's findings of fact, the Court does not defer to the trial court's determinations of law. *City of Kansas City v. Hon,* 972 S.W.2d 407, 409 (Mo.App.1998).

Viewing the evidence in a light most favorable to the judgment, *Barrows v. Firstar Bank,* 103 S.W.3d 386, 390 (Mo. App.2003), the record reveals that on or about April 12, 1999, Joseph Shaheen ("Dr. Shaheen") and his company, Riverbend Behavioral Medicine PC ("Riverbend"), entered into "a commitment for a loan" ("the Loan") in the amount of $250,000.00 with NationsBank ("the Bank").[2] The Loan was secured by a second deed of trust ("the Deed of Trust") on *two* separate parcels of real property owned by Dr. Shaheen and Riverbend. The collateral property is described as being located at 3759 South Pickwick in Springfield, Missouri ("the Greene County property")[3] and "Lake Road, Sunrise Beach MO" ("the Camden County property").

On April 22, 1999, Jeff Payne ("Mr. Payne"), a loan officer at the Bank, contacted Evans and requested that Evans perform a title search for the Greene County property; prepare a title insurance

commitment for the Greene County property; and act as the closing agent for the Loan.[4] Subsequently, Evans issued its "Commitment for Title Insurance" for the Greene County property.

Around the same time, Mr. Payne contacted Chalfant and requested that it prepare a title insurance commitment on the Camden County property.[5] Chalfant complied with this request. On April 27, 1999, Chalfant provided a copy of the title insurance commitment to both the Bank and Evans. Chalfant then sent the Bank and Evans an invoice for $515.00 for its work relating to the Camden County title insurance commitment.[6]

Evans closed the loan on April 30, 1999. At the closing, Dr. Shaheen executed the Deed of Trust prepared by Mr. Payne in favor of the Bank which listed legal descriptions for both the Greene County property and the Camden County property. The Deed of Trust, as prepared by the Bank, contained the following language typed in the upper left hand corner of the first page of the document:

RECORDATION REQUESTED BY:

[the Bank]

*Loan Administration*

P.O. Box 790177

St. Louis, MO 63179–0177

2. NationsBank is now known as Bank of America. SRC is the ultimate assignee of the loan in question. In this opinion for ease of discussion we will refer to SRC as either "SRC" or "the Bank."

3. This Greene County property was encumbered by a prior mortgage with North American Mortgage Company ("NAMC").

4. Mr. Payne acknowledged at trial that he could not recall any specific oral communication with either Evans or Chalfant as to how the Deed of Trust was to be recorded. Further, Mr. Payne did not present any originals or copies of written instructions relating to

which company was to record the Deed of Trust. Under cross-examination Mr. Payne related that it "would be our expectation when we engaged them for the title work" that "the Greene County recording it would have been Evans. And as far as Camden it would have been Chalfant...."

5. Chalfant is an issuing agent for LTIC.

6. The itemized invoice charged $100.00 for a "[c]ommitment to insure;" $405.00 for a "[l]oan [p]olicy for $204,500.00;" and $10.00 for a "[f]ax fee." The invoice did not reflect a recording fee for recording the deed of trust in Camden County.

WHEN RECORDED MAIL TO:
[the Bank]
Loan Administration
P.O. Box 790177
St. Louis, MO 63179–0177

Evans recorded the Deed of Trust in Greene County on May 6, 1999, and the original document was forwarded to the Bank at the aforementioned address. Neither Evans nor Chalfant recorded the Deed of Trust in Camden County

On September 14, 1999, Chalfant notified Evans that it had not issued the title insurance policy on the Camden County property because, among other things, it had not received a copy of the recorded Deed of Trust. On January 4, 2000, Chalfant again notified Evans that it had not received a copy of the recorded Deed of Trust. Chalfant made no attempt to notify the Bank.

Meanwhile, on January 29, 2001, Dr. Shaheen granted an additional deed of trust on the Camden County property to First NLC Financial Services, LLC ("First NLC") securing a loan in the amount of $285,000.00. The First NLC deed of trust was recorded in Camden County on January 29, 2001.

Dr. Shaheen passed away on February 13, 2001, and subsequently the Loan with the Bank went into default.

On July 24, 2001, NAMC released its first deed of trust on the Camden County property.

On August 10, 2001, an employee at the Bank completed an internal form entitled "Credit Approval Request" in which it requested "approval to demand and litigate to collect the [Loan]...."[7]

Having discovered the Deed of Trust had never been filed in Camden County, the Bank recorded its Deed of Trust in Camden County on August 23, 2001.

On September 25, 2001, First NLC's successor, Household Finance Service, foreclosed on the First NLC deed of trust on the Camden County property and the property was sold at public sale.

On September 28, 2001, the Bank's successor assigned all of its right, title and interest in and to the Loan and the Deed of Trust and all documents evidencing and securing the transaction to SRC.[8] On December 28, 2001, NAMC foreclosed on its first deed of trust on the Greene County property and SRC purchased the Greene County property at the public sale for $145,000.00.

The record further reveals that on April 1, 2002, Chalfant sent Evans a check for $405.00 "for the loan policy in the amount of $202,500.00 for [the Bank]" and a letter informing it that Chalfant was "unable to issue the loan policy since the requirements were not met within the time frame of the commitment issued on April 15, 1999." Chalfant requested that Evans for-

---

**7.** In the "Justification" portion of the form, the Bank employee wrote:

The Bank has a 2nd Deed of Trust dated 4/30/99 on Dr. Shaheen's residence subject to a [$133,300.00] 1st Deed of Trust with [NAMC]. In addition, the Bank has a Deed of Trust dated 4/30/99 on the above described lake property located in Camden County, MO that was originally subject to a 1st Deed of Trust with [NAMC]. [NAMC] was paid in full 1/01 on the lake property entitling the Bank to a 1st lien position.

However it appears the Bank failed to record their Deed of Trust in 4/99 and as of 2/01 a Deed of Trust in the amount of [$285,000.00] was filed by [First NLC].

**8.** SRC purchased the Loan, including the Deed of Trust, from the Bank in a large pool of other loans. At the time of this transaction SRC was aware the Loan in question was in default. SRC did not file the Deed of Trust assigned to it until March 7, 2002.

ward the premium refund "to the appropriate party."

In November of 2004, SRC filed suit against LTIC, Evans, and Chalfant for breach of contract, negligence, and breach of fiduciary duty. In its petition, SRC alleged that "Evans, Chalfant, and LTIC failed to promptly record the Deed of Trust in Camden County, Missouri ..." and that "[a]s a direct and proximate result of [this] delay in recording, SRC's Deed of Trust is now in the second position on the Camden County property...." As a result, SRC asserted it "has been deprived of its security for the Loan, and has been damaged."

At trial on January 26, 2006, LTIC, Evans, and Chalfant each made motions for a directed verdict. The trial court granted LTIC's motion for a directed verdict and denied the motions of Evans and Chalfant.

■ At the close of all the evidence, the trial court found the Bank "sent written instructions to [Evans] to close the transaction" but "sent no written instructions to [Chalfant];" neither Evans nor Chalfant "received written or oral instructions from [the Bank] to record the [D]eed of [T]rust in Camden County, Missouri;" Evans "closed the transaction, recorded the [D]eed of [T]rust in Greene County, Missouri, and in accordance with the instructions printed on the [D]eed of [T]rust, returned the instrument to [the Bank];"

and "[t]he [D]eed of [T]rust was not recorded in Camden County, Missouri until after an intervening deed of trust was of record." The trial court concluded that "under the facts of this case, neither [Evans nor Chalfant] owed [the Bank] or any successor a duty to record the [D]eed of [T]rust in Camden County, Missouri." As a result, the trial court ruled in favor of Evans and Chalfant, ruled against SRC, and taxed all costs of litigation against SRC. This appeal by SRC followed.

■ In its first point on appeal SRC asserts the trial court erred in granting judgment in favor of Chalfant and Evans because its ruling was against the weight of the evidence and not supported by substantial evidence in that SRC established Evans and Chalfant breached their contract by failing to record the Deed of Trust in Camden County.[9]

■ To prevail on a breach of contract claim, "a plaintiff must allege and prove (1) mutual agreement between parties capable of contracting; (2) mutual obligations arising out of the agreement; (3) valid consideration; (4) part performance by one party; and (5) damages resulting from the breach of contract." *Fidelity Nat. Title Ins. Co. v. Tri–Lakes Title Co., Inc.*, 968 S.W.2d 727, 730 (Mo.App.1998).

Despite SRC's contention that "there was at least an oral contract between [the

---

**9.** We observe that in each of SRC's points relied on it sets out that Evans's and Chalfant's "failure to account and failure to advise [the Bank]" variously constituted evidence of breach of contract, breach of fiduciary duty or breach of duty under a negligence claim. According to SRC, the trial court erred in finding otherwise; however, SRC fails to develop these contentions in the argument portions of the respective points relied on. " 'An appellant must develop the contention raised in the point relied on in the argument section of the brief.' " *Weisenburger v. City of St. Joseph*, 51 S.W.3d 119, 124 (Mo.App.2001)

(quoting *Luft v. Schoenhoff*, 935 S.W.2d 685, 687 (Mo.App.1996)). Additionally, SRC fails to cite any case law relating to either allegation. *Richmond v. Springfield Rehab & Healthcare*, 138 S.W.3d 151, 154 (Mo.App. 2004). "Arguments raised in the points relied on that are not supported by argument in the argument portion of the brief are deemed abandoned and present nothing for appellate review." *Weisenburger*, 51 S.W.3d at 124. Accordingly, we do not address the portions of SRC's points relied on relating to "failure to account and failure to advise."

Bank], Evans and Chalfant to handle a closing and record the Deed of Trust in Greene County and Camden County," sufficient evidence in the record supports the trial court's determination that SRC failed to establish there was a contract between the Bank, Evans and Chalfant requiring either Evans or Chalfant record the Deed of Trust in Camden County.

Mr. Payne testified that he contacted Evans's representative about the transaction via facsimile on April 22, 1999, in order to request a "Title Policy" on the Greene County property and a loan closing. Evans then issued its "Commitment for Title Insurance." Thereafter, Dr. Shaheen signed the Deed of Trust; Evans recorded the Deed of Trust in Greene County; and Evans returned the Deed of Trust to the Bank due to printed instructions on the face of the Deed of Trust which directed that the Deed of Trust be returned to the Bank upon recordation.

At trial, Mr. Payne testified that at the time the Loan was issued he was a loan administrator with the Bank and that he had held that position for three years. In his position as loan administrator, Mr. Payne stated his job entailed "engag[ing]" title companies ... for title work" and he performed these acts approximately sixty times per month.

Mr. Payne testified that he was not familiar with Dr. Shaheen's transaction until he reviewed the Bank's documentation prior to his deposition in this matter. Mr. Payne testified that the Loan documentation showed that Evans was "the title company that was for the Springfield address" and that "[t]he [D]eed of [T]rust was supposed to be sent back to Camdenton, to Chalfant...."

Mr. Payne also testified that he would have been "the official point of contact" at the Bank and that he would have been the one to personally contact Evans and Chalfant although he did not specifically remember doing so. He stated that typically in contacting a title company he would have sent them "an engagement form" with information relating to the transaction as well as "written instructions ... [on] a simple worksheet that [he] typed up." Mr. Payne also testified that he was responsible for preparing the Deed of Trust. Regarding the "recordation requested by" and "when recorded mail to" language which appears in the upper left hand corner of the Deed of Trust, Mr. Payne testified that such language "was standard language that was in [the Bank's] documentation system" and it signified that "[o]nce a deed of trust has ... finally been recorded, to mail it back to [the Bank]."

Mr. Payne further testified that it was the Bank's intention that the Deed of Trust be recorded in both Greene and Camden counties and that it should have been done by "[t]he title company." When asked which title company should have recorded it, Mr. Payne stated, "Greene County is Evans ... I think." He was then asked, "Who did you intend would record the [D]eed of [T]rust in Camden County?" and he replied, "Camden County." Additionally, Mr. Payne stated it was his "understanding ... that the two title companies were supposed to record [the][D]eed of [T]rust in specific counties, Camden County and Greene County." As previously related, he stated that "as far as the Greene County recording it would have been Evans. And as far as Camden it would have been Chalfant...."

Mr. Payne also related he could not remember "specific conversations" with the parties, but insisted there would have been written instructions "on an instruction sheet. [He] wouldn't have attempted to close without having direct communication with all parties involved." Although

he could not recall his conversations with Evans and Chalfant, Mr. Payne insisted that he must have given them verbal instructions if he had not given them written instructions. He stated that the situation where a deed of trust covered two properties in different counties was "not a typical type of transaction and that is why in this case there had to be communications. . . ." Mr. Payne also testified that he had no knowledge regarding the fact that the Deed of Trust was never recorded in Camden County at the time of Loan nor did he know how the Deed of Trust came to be recorded in 2001. He stated that once a loan was closed at the Bank all of the documentation would be forwarded to "the post[-]closing review person" and his portion of the transaction was completed. He further related that the post-closing review person would have been the one to have received "any documents recorded." Mr. Payne stated that it was the responsibility of the post-closing review group to make sure all of the necessary mortgage documents had been recorded and "to make sure that the [B]ank finally gets the policy and it is recorded. . . ." Lastly, Mr. Payne acknowledged there was nothing in the record which showed that anyone in the post-closing review group ever contacted Evans or Chalfant about problems with the Loan and he noted he never contacted the post-closing review group on this issue.

Regarding Chalfant, the record reveals Mr. Payne telephoned Chalfant's representative in April of 1999 and requested it prepare a "commitment to insure" the Camden County property. Chalfant prepared the title commitment and sent copies to both the Bank and Evans on April 27, 1999. According to Chalfant's representative, Chalfant was never given written instructions of any kind relating to the preparation of the title commitment or recordation of the Deed of Trust nor was Chalfant ever provided with a copy of the Deed of Trust.

Mr. Payne admitted at trial there was nothing in the record which showed the Bank instructed Chalfant to file the Deed of Trust in Camden County and that "[t]here's nothing in these exhibits that specifically states that." Further, he stated he could not recall ever contacting Chalfant about any problems with the Deed of Trust. Mr. Payne also noted that the invoice the Bank received from Chalfant contained no notation that it had "charged for a recording fee."

Chalfant's representative also stated she had no knowledge relating to specifics of the closing or anything else which followed Chalfant's preparation of the title commitment it supplied to Evans. She also stated she did not feel she had an obligation to notify the Bank that she had never received the necessary documentation from Evans, because she had been "asked to send things to [Evans]" and the Bank would "have known [Chalfant's commitment had expired] if they would have looked at their commitment."

In short, the record reflects Chalfant was asked by Mr. Payne to do a title search and prepare a commitment on the Camden County property and to forward that documentation to the Bank and Evans. Chalfant performed as requested. Chalfant received no instructions from either Evans or the Bank regarding any obligation it had to record the Deed of Trust in Camden County. In fact, Chalfant did not receive the Deed of Trust or even a copy of the Deed of Trust during the entirety of this transaction. As such, there is nothing in the record to establish the Bank had a contract with Chalfant which required Chalfant to record the Deed of Trust.

The deposition of Marion McGlaughlin ("Ms. McGlaughlin"), an employee with

Evans, was read into the record at trial. It showed that at the time of the Loan, Ms. McGlaughlin was responsible for recording documents and doing title searches. She stated that she personally recorded the Deed of Trust at the Greene County courthouse and then, per the instructions on the Deed of Trust, mailed it to the Bank. Ms. McGlaughlin knew Chalfant was handling the title search and policy on the Camden County property, but she had no knowledge about whether Chalfant was supposed to record the Deed of Trust in Camden County. She stated that all she knew about the Deed of Trust was that she "was supposed to return it to [the Bank]" and she had no knowledge "about the responsibilities of anyone else." She stated that the only written instruction to her from the Bank was the "when recorded mail to" language on the face of the Deed of Trust.

In its brief, SRC maintains the trial court erred in finding there was no duty on the part of either defendant to record the Deed of Trust in Camden County because, according to SRC, title companies and escrow agents have a duty to record documents. In support of this latter assertion, SRC relies on *Allen v. Webb,* 87 Nev. 261, 485 P.2d 677 (1971); and *Lawyers Title Ins. Corp., v. Pokraka,* 595 N.E.2d 244 (Ind.1992).[10] These cases, however, are not persuasive.

In *Allen,* 485 P.2d at 680, there were *specific, written* instructions to record the owner's deed of trust. Here, SRC presented no evidence other than Mr. Payne's speculation that he probably gave verbal instructions to have the Deed of Trust recorded in Greene and Camden Counties. Furthermore, *Pokraka,* 595 N.E.2d at 245–46, is also easily distinguishable on its facts. *Pokraka* did not involve the filing of a deed of trust in two counties, but the filing of a deed of trust in one county. *Id. Pokraka* sets out the proposition that a title agency acting as a closing agent has the duty to promptly record a mortgage and advise of a delay if this was not promptly accomplished. *Id.* at 248.

In the instant matter, Evans *did* promptly record the Deed of Trust in Greene County, according to the way it interpreted the Bank's directions on the face of the Deed of Trust. Furthermore, the evidence is inconclusive that the $81.00 recording fee set out in the settlement statement by Evans reflected the cost of recording the Deed of Trust in both Greene and Camden Counties.[11] Additionally there is little probative evidence in the record supporting the proposition that Evans undertook the *specific duty* to record the instrument in both counties. We defer to the trial court's findings of fact when supported by the evidence. *City of Kansas City,* 972 S.W.2d at 409.

---

10. We note that in its brief and at oral argument SRC relied on the unpublished opinion of *DeWitt Brothers Homes, Inc. v. National Title Resources Corp.,* 1996 WL 278230 (Minn. App.1996). Unpublished opinions "are neither binding nor persuasive precedent in this [C]ourt." *Craft v. Philip Morris Companies, Inc.,* 190 S.W.3d 368, 376 (Mo.App.2005); *see* Rule 84.16(b), Missouri Court Rules (2006); Minnesota Rules of Civil Appellate Procedure 136.01.1(b) (stating that "[u]npublished opinions ... are not precedential except as law of the case, res judicata or collateral estoppel, and may be cited only as provided in Minn. Stat. [section] 480A.08, subd. 3 (1996)"). Ac-

cordingly, we do not discuss *DeWitt* in this opinion.

11. Evidence in the record revealed that the recording fee for the Deed of Trust in Greene County was $39.00. Additionally, the fee for filing of "affidavits" in connection with the transaction amounted to $24.00. Chalfant's agent testified that it would take an additional $39.00 to record the Deed of Trust in Camden County. Based on the foregoing these totals would exceed the $81.00 filing fees set out in Evans's settlement statement.

Viewing the evidence in a light most favorable to the judgment, *Barrows*, 103 S.W.3d at 390, we cannot say the trial court erred when it determined "neither defendant owed" a "duty [to SRC] to record the [D]eed of [T]rust in Camden County." SRC has failed to prove there was a contract between it and Evans and/or Chalfant which would require either of the entities to record the Deed of Trust in Camden County. Accordingly, neither defendant breached any contract provision with SRC. The trial court's judgment was supported by substantial evidence, was not against the weight of the evidence, and did not erroneously apply the law. *See Murphy*, 536 S.W.2d at 32. Point One is denied.

SRC's second point relied on contends the trial court erred in granting judgment in favor of Chalfant and Evans because its ruling was against the weight of the evidence and erroneously applied the law in that the evidence presented by SRC "established breach of fiduciary duty against ... Chalfant and Evans by their failure to record the Deed of Trust, failure to account and failure to advise [the Bank]." [12] It is our view that neither Evans nor Chalfant breached any fiduciary duty owed to the Bank to record the deed of trust in Camden County.[13]

"Breach of fiduciary duty is a claim arising in tort...." *Preferred Physicians Mutual Management Group v. Preferred Physicians Mutual Risk Retention*, 918 S.W.2d 805, 810 (Mo.App.1996). Where, as here, breach of fiduciary duty is asserted as a tort claim, the proponent must establish that a fiduciary duty existed between it and the defending party; that the defending party breached the duty; and that the breach caused the proponent to suffer harm. *Grewell v. State Farm Mut. Auto. Ins. Co.*, 162 S.W.3d 503, 508 (Mo.App.2005). It is clear, however, that any fiduciary duty that may have arisen between the Bank and the parties arose because Evans and Chalfant were acting as agents for Bank, the principal. " '[A]n agent is a fiduciary with respect to matters within the scope of agency.' " *State ex rel. Ford Motor Co. v. Westbrooke*, 12 S.W.3d 386, 390 (Mo.App.2000) (quoting *State ex rel. Elson v. Koehr*, 856 S.W.2d 57, 60 (Mo. banc 1993)). " '[A] principal has the right to control the conduct of the agent with respect to matters entrusted to the agent.' " *State ex rel. Ford Motor Co.*, 12 S.W.3d at 390 (quoting *State ex rel. Elson*, 856 S.W.2d at 60). However, as in *Eastern Atlantic*, 727 S.W.2d at 423, involving escrow agents, the

---

**12.** SRC concedes that "[t]he facts supporting SRC's claim for breach of fiduciary duty are essentially the same as those which establish breach of contract...."

**13.** SRC's reliance on *Eastern Atlantic Transp. and Mech. Eng., Inc. v. Dingman*, 727 S.W.2d 418 (Mo.App.1987), for the assertion that Missouri courts recognize the existence of a fiduciary duty owed by the title insurance company and it agents, while a correct statement of the law, is misplaced as applied to the instant matter. In *Eastern Atlantic*, the appellate court found that "[a]n escrow agent owes a fiduciary duty to those parties for whom he holds property. Thus, the duty imposed upon [an escrow agent] is by virtue of a fiduciary

relationship created by the escrow agreement." *Id.* at 423 (internal citation omitted). As best we discern, the fiduciary duty created in *Eastern Atlantic* was created by a written escrow document. *Id.* Here, as the record reveals, there is but a paucity of evidence pointing to any written documents or oral agreements upon which a duty could be based.

Additionally, we observe that in its argument under this point relied on, SRC states that the fiduciary duty between the parties "arose from the course of dealing;" however, SRC fails to support this assertion with citation to relevant case law or analysis. *Weisenburger*, 51 S.W.3d at 124.

duty imposed on Evans and Chalfant would have arisen from either a written or oral contract.

Regarding Evans, Mr. Payne testified there were no written communications between the parties on the issue of recordation of the Deed of Trust, and that any communication would have been verbal, although he could not recall a single conversation with Evans on this topic. Ms. McGlaughlin testified that she knew of no verbal or written instructions given to Evans other than the language on the Deed of Trust which instructed Evans to send the recorded document to the Bank, which it did after recording the Deed of Trust in Greene County.

Similarly, Mr. Payne acknowledged there was no written documentation between Chalfant and the Bank and that he could not recall the substance of any verbal communications he had with Chalfant, if any, regarding where the Deed of Trust was to be recorded.

Accordingly, the Bank has not established that the scope of its agency agreement with either Evans or Chalfant involved the recording of the Deed of Trust in Camden County. Under these circumstances we do not see how there could possibly be a breach of fiduciary duty owed to the Bank. Point Two is without merit.

In its third point on appeal, SRC asserts the trial court erred in granting judgment in favor of Chalfant and Evans on the issue of negligence. Specifically, SRC maintains the trial court's ruling was not supported by sufficient evidence and erroneously applied the law because SRC "established negligence against ... Chalfant and Evans by their failure to record

the Deed of Trust, failure to account and failure to advise [the Bank]." [14]

"In an action for negligence, plaintiff must establish that defendant had a duty to plaintiff, that defendant failed to perform that duty, and that defendant's breach was the proximate cause of plaintiff's injury." *Hecker v. Missouri Prop. Ins. Placement Facility,* 891 S.W.2d 813, 816 (Mo. banc 1995). "Whether a duty exists is purely a question of law." *Boggs ex rel. Boggs v. Lay,* 164 S.W.3d 4, 15 (Mo.App.2005).

As set out in our recitation of the facts and the analysis made under Points One and Two, there is nothing in the record which established a "duty" by either Evans or Chalfant to protect the Bank by recording the Deed of Trust in Camden County. As we discern the evidence, there is little, persuasive evidence of any written or verbal evidence that either Evans or Chalfant had an obligation to record the Deed of Trust in Camden County or that they were ever told by the Bank to do so.

The trial court did not err in ruling against SRC on its claim of negligence against Evans and Chalfant. Point Three is denied.

The trial court's judgment was supported by substantial evidence, was not against the weight of the evidence, and did not erroneously apply the law. *See Murphy,* 536 S.W.2d at 32.

The judgment of the trial court is affirmed.

GARRISON, J., and BATES, C.J.

---

14. Again, SRC concedes that "[t]he facts and grounds which support the contract and fiduciary duty claims also support negligence...."