

# Missouri Court of Appeals

### Southern District

### Division Two

JOHN MICK and TERESA MICK,    )
    )
    Plaintiffs-Appellants,    )
    )
vs.    )    No. SD33149
    )
WAYNE MAYS and CONNIE MAYS,    )    **Filed:  May 11, 2015**
    )
    Defendants-Respondents.    )

### APPEAL FROM THE CIRCUIT COURT OF BUTLER COUNTY

Honorable Michael M. Pritchett, Circuit Judge

## AFFIRMED

Mike Mick and Teresa Mick appeal from the trial court's judgment in favor of Wayne Mays and Connie Mays.[1]  The judgment was entered after a bench trial regarding the petition filed by Mike and Teresa, which sought an accounting and windup of a partnership, damages for breach of fiduciary duty, and rescission of a buy-sell agreement.  The arguments raised by Mike and Teresa ignore the standard of review, and we affirm the trial court's judgment.

### Standard of Review

In a court-tried matter, this Court will "affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the

---

[1] Because some of the parties have the same last name, first names are used for the sake of clarity. No disrespect is intended.

evidence, or it erroneously declares or applies the law." ***State Resources Corp. v. Lawyers Title Ins. Corp***, 224 S.W.3d 39, 41 (Mo. App. S.D. 2007). When reviewing factual questions, "this Court accepts 'as true the evidence and inferences therefrom that support the trial court's judgment and disregard[s] contrary evidence.'" ***Id.*** (quoting ***Vaughn v. Willard***, 37 S.W.3d 413, 415 (Mo. App. S.D. 2001)).

## Factual and Procedural Background

Teresa and Connie were the daughters of farmer Glen Harrison. In 2000, Mr. Harrison retired from farming. Teresa and her husband, Mike, and Connie and her husband, Wayne, formed a farming partnership to continue the family farming business under the name Glenco Farms.

While the partnership was engaged in the farming business, a company called Bayer Crop Science ("Bayer") planted genetically modified rice in the area near the Glenco Farms operation. In 2006 the genetically modified rice spread into other rice operations and caused the price of rice to drop. Other farmers in the area considered suing Bayer, but Mike was convinced a lawsuit would not "amount to anything."

Wayne, however, agreed to meet with one of the lawyers bringing suit against Bayer and with another farmer on September 6, 2006, to discuss the Bayer litigation. Wayne hired the lawyer to represent Glenco Farms in the Bayer litigation.

Wayne had notified Mike of the meeting, but Mike did not arrive until the conclusion of the meeting. Mike drove up to the Glenco Farms office as the others were leaving. Wayne told Mike about the meeting. Mike swore, told

2

Wayne "it wasn't worth [messing] with[,]" rolled up his window, and drove off. At that time Wayne believed Glenco Farms would get "little to nothing" from the Bayer litigation.

During the following years, Mike and Wayne did not discuss the Bayer litigation. Glenco Farms received letters about the progress of the suit, and, as was their usual partnership procedure, Wayne put the letters on the desk in the office with the other mail for Glenco Farms. Mike came to the office daily and would look through the mail. Wayne provided information to the lawyer when required for the Bayer litigation. There was no indication that any of the approximately 19 letters received from Bayer were hidden or undisclosed.

In 2010, Mike decided to retire from farming for health reasons. Mike wanted to liquidate the business, but Wayne wanted to continue farming. Around this same time, Glenco Farms received information by letter that Bayer had indicated an interest in settling the claims in the Bayer litigation. This letter was also put on the desk for review.

Mike, Teresa, Wayne, and Connie entered into a buy-sell agreement on December 17, 2010. That agreement provided that "Seller shall deliver to Buyer at closing a Bill of Sale to transfer said undivided one-half interest in the Partnership, including all assets and equipment, free of all encumbrances, except as otherwise disclosed in this agreement." The agreement did not mention the Bayer litigation.

On December 20, 2010, Glenco Farms received a letter indicating Bayer was recommending a settlement amount of $310 per acre. According to Wayne, the information regarding the settlement "was in every paper in the [s]tate of

3

Missouri," but Wayne and Mike were not talking at that time, and they did not discuss it. Wayne put this letter on the desk in the Glenco Farms office for Mike to examine with the rest of the mail. No money was paid to Glenco Farms at that time, nor was the settlement final.

On January 31, 2011, Mike and Teresa executed a bill of sale that conveyed an "undivided one-half interest in Glenco Farms" to Wayne and Connie. The consideration paid was $825,000 and included some land. Mike and Teresa also resigned from the Glenco Farms Partnership on that date.

In July 2011, Teresa received a mailing regarding the finalized Bayer settlement from Bayer. She confronted Wayne with the mailing. He refused to give Mike and Teresa a portion of the settlement. Ultimately, Glenco Farms received over $177,000 in settlement of its claims against Bayer.

Mike and Teresa sued Wayne and Connie seeking an accounting and winding up of the partnership, damages for breach of fiduciary duty for failing to disclose the Bayer litigation, rescission of the buy-sell agreement based on mutual mistake and unilateral mistake, and punitive damages. The trial court held a bench trial and issued a judgment including detailed findings. First, the trial court found the partnership was dissolved on January 31, 2011, and was a sale of the partnership interest with all the assets divided, so there was no basis for an accounting and winding up. The trial court noted it did not believe Mike's testimony that he did not know about the Bayer litigation and denied the claim for breach of fiduciary duty. Finally, the trial court determined there was no mistake justifying recession of the buy-sell agreement because Mike knew about

4

the Bayer litigation. The trial court entered judgment in favor of Wayne and Connie on all counts. Mike and Teresa appeal.

## Discussion

Mike and Teresa raise three points on appeal. For ease of analysis, we first address Point I and Point III together.

### *Mike Knew About the Bayer Litigation*

In their first point, Mike and Teresa argue the trial court erred when it found Wayne did not breach his fiduciary duty to Mike and Teresa by failing to disclose the Bayer litigation. In their third point, Mike and Teresa argue the trial court erred in denying their request for rescission of the buy-sell agreement based on unilateral mistake because Wayne failed to disclose the Bayer litigation. Both of these points fail because the trial court found Wayne did notify Mike regarding the Bayer litigation, and there was substantial evidence to support that finding.

Mike and Teresa correctly state the nature of the duty between partners. With respect to their claim for breach of fiduciary duty, Mike and Teresa are correct that Wayne owed them a fiduciary duty because they were partners and that the duty continued through the sale of Mike and Teresa's partnership interests. *See **State Auto. and Cas. Underwriters v. Johnson***, 766 S.W.2d 113, 124 (Mo. App. S.D. 1989). Nevertheless, Mike and Teresa's argument overlooks the other elements of a claim for breach of fiduciary duty and the trial court's explicit credibility findings regarding the facts relevant to those elements. To succeed on a claim of breach of fiduciary duty, "the proponent must establish that a fiduciary duty existed between it and the defendant party, that the

5

defending party breached the duty, and that the breach caused the proponent to suffer harm." ***Zakibe v. Ahrens & McCarron, Inc.***, 28 S.W.3d 373, 381 (Mo. App. E.D. 2000). In the context of this case, the alleged breach of fiduciary duty was the failure to inform Mike and Teresa about the Bayer litigation. If Wayne informed Mike and Teresa about the Bayer litigation there was no breach. The claim for rescission was based on an allegation of mistake, which may be, under appropriate circumstances, a ground for rescission. *See **R & R Land Dev., L.L.C. v. American Freightways, Inc.***, 389 S.W.3d 234, 239 (Mo. App. S.D. 2012). However, if Mike knew about the Bayer litigation, there was no mistake.

Despite the attempt by Mike and Teresa to treat these points as errors of law, the trial court's judgment must be affirmed if the trial court's finding that Mike and Teresa knew about the Bayer litigation is supported by substantial evidence and is not against the weight of the evidence. "A claim that there is no substantial evidence to support the judgment or that the judgment is against the weight of the evidence necessarily involves review of the trial court's factual determinations." ***Pearson v. Koster***, 367 S.W.3d 36, 43 (Mo. banc 2012). "A court will overturn a trial court's judgment under these fact-based standards of review only when the court has a firm belief that the judgment is wrong." ***Id.*** "In reviewing of questions of fact, the reviewing court will defer to the trial court's assessment of the evidence if any facts relevant to an issue are contested." ***Id.*** at 44. "Once contested, 'a trial court is free to disbelieve any, all, or none of th[e] evidence,' and 'the appellate court's role is not to re-evaluate testimony through its own perspective.'" ***Id.*** (quoting ***White v. Director of Revenue***, 321 S.W.3d 298, 308-09 (Mo. banc 2010)).

6

When the facts are viewed as they must be, in the light most favorable to the trial court's judgment, it is clear Wayne provided Mike and Teresa notice of the Bayer litigation and the progress of the Bayer litigation. When the Bayer litigation started in 2006, Wayne informed Mike of the initial meeting with the lawyer, but Mike chose not to attend. By late December 2010 and early January 2011, Mike and Wayne were not on speaking terms. Wayne communicated with Mike and Teresa by leaving documents and letters on the desk in the partnership office. When Wayne received documents informing him that Bayer might settle the Bayer litigation, he placed them on the desk in the partnership office. Mike was in the office and looked through the mail. Teresa, as a partner, had the right and responsibility to do the same. Thus, Wayne gave Mike and Teresa notice of the Bayer litigation and the potential settlement, and the trial court's conclusion to that effect was supported by substantial evidence.

Mike and Teresa implicitly acknowledge that conclusion and focus their factual arguments on an against-the-weight-of-the-evidence challenge. In support of their contention that the finding was against the weight of the evidence, Mike and Teresa discuss the fact that Mike did not attend the meeting where Wayne retained counsel for the Bayer litigation, that Wayne did not have a verbal conversation with Mike about the Bayer litigation, and that Mike was meticulous in identifying assets to be divided in the buy-sell agreement, but did not include the Bayer litigation. The problem with these arguments is that they ignore the trial court's credibility findings and do not explain why those circumstances are more probative than Wayne's testimony. Even in an against-the-weight-of-the-evidence argument, this Court must resolve all conflicts in the

evidence "in accordance with the trial court's credibility determinations[.]" ***Houston v. Crider***, 317 S.W.3d 178, 187 (Mo. App. S.D. 2010). The trial court found Mike's testimony that he did not know about the litigation to be unworthy of belief. The circumstantial evidence on which Mike and Teresa rely does not have more probative value than Wayne's testimony regarding the partnership practice for sharing information.

Point I and Point III are denied.

### *No Assets Were Omitted from the Buy-Sell Agreement*

In their second point, Mike and Teresa argue the trial court erred in denying their request for an accounting and winding up of the partnership because "as a matter of law, the partnership continued as it related to the Bayer Rice Litigation partnership asset[.]" As with their other points, this point is without merit because it rests on factual allegations contrary to the trial court's findings.

Mike and Teresa are correct that the Uniform Partnership Law provides any partner with a right to a formal accounting of partnership affairs under certain circumstances. § 358.220, RSMo (2000). However, this right does not extend to former partners after the completion of an agreement regarding the sale of the partnership interest. ***Pupillo v. Pupillo***, 863 S.W.2d 631, 632 (Mo. App. E.D. 1993). This is because, after the completion of such an agreement, the business belongs to the remaining partners alone. ***Id.***

On December 17, 2010, the parties entered into an agreement regarding the sale of Mike and Teresa's partnership interests. Wayne testified that this agreement was to be a sale of Mike and Teresa's partnership interests in Glenco

8

Farms.  The written agreement provided that any partnership assets not mentioned in the agreement were transferred as part of the partnership interest. The parties finalized the agreement on January 31, 2011.  Mike and Teresa formally withdrew from the partnership on that date.  Thus, as the trial court correctly found, after January 31, 2011, Mike and Teresa were not partners and had no right to demand an accounting.

Mike and Teresa attempt to avoid this conclusion by characterizing the potential proceeds of the Bayer litigation as an asset that was omitted from the agreement regarding the winding up of the partnership affairs.  They make two primary arguments in support of this characterization.  First, they analyze the property division in the buy-sell agreement in an effort to demonstrate that the transaction completed on January 31, 2011, was an equal division of the partnership *assets* rather than a sale of their partnership *interests*.  They cite **Johnson** in support of the proposition that "[w]here partners attempt to strike a settlement of partnership property and accounts in winding up the partnership, but omit certain partnership property or accounts therefrom, the partnership continues as to those properties or accounts."  Both of these arguments are incorrect.

Mike and Teresa's discussion of the property division ignores the standard of review.  The trial court credited Wayne's testimony that the agreement was intended to be a sale of the partnership interest.  The text of the buy-sell agreement is in accord with that understanding.  The inferences Mike and Teresa attempt to draw from the other terms of the agreement are contrary to the plain language of the parties' written agreement.

9

Mike and Teresa's reliance on ***Johnson*** is misplaced because the terms of the agreement in ***Johnson*** were different from the terms of the agreement in this case. In ***Johnson*** the agreement explicitly provided the new partnership had to pay rent to the old partnership for use of an asset. 766 S.W.2d at 115. That fact indicated the parties in that case did not intend to transfer all the assets to the new partnership. ***Id.*** Here, in contrast, the agreement provided for the sale of an undivided one-half interest in the partnership and all its assets. The agreement specifically stated that any assets not mentioned in the agreement were transferred with the partnership interest. The agreement contemplated that there were other assets not stated in the agreement and provided that any unidentified assets would be transferred to Wayne and Connie.

As the trial court correctly found, there were no omitted assets. Point II is denied.

## Decision

The trial court's judgment is affirmed.


MARY W. SHEFFIELD, P.J. – OPINION AUTHOR

NANCY STEFFEN RAHMEYER, J. – CONCURS

DON E. BURRELL, J. – CONCURS