DON E. BURRELL, J.
This case involves the purported 2005 sale of a garage at Pointe Royale condominiums in Branson that, as it turns out, was not capable of being sold separately from the condominium unit associated with it. After a bench trial, the trial court found that while Defendants Danny L. Robinson and Taynia Robinson ("Sellers") did not intend to defraud Plaintiffs John Wesley Strange and Saundra J. Strange ("Buyers"), "[t]itle to the garage unit was not transferred to [Buyers] as each party thought and believed[.]" As a result, the judgment declared that "[t]his is a case of mutual mistake of fact" and awarded Buyers $14,000 "as return of the purchase price and the sum of $8,366" for Buyers' attorney fees incurred in the instant matter and in another lawsuit involving Buyers' attempted resale of the garage.[1]
*347 Sellers' two points on appeal contend that the trial court: (1) misapplied the law in that Buyers "never plead[ed] a claim for mutual mistake"; and (2) "erroneously applied the law of rescission due to fraud" because Sellers "did not make any false representations, [Buyers] did not rely on representations by [Sellers], and [Buyers'] reliance was not reasonable."
Finding their first claim unpreserved, and their second claim moot, we affirm.
Applicable Principles of Review and Governing Law
We will affirm the judgment unless there is no substantial evidence supporting it, it is against the weight of the evidence, or it erroneously declares or applies the law. Murphy v. Carron , 536 S.W.2d 30, 32 (Mo. banc 1976). "When reviewing a court-tried case, we view all evidence and [reasonable] inferences in the light most favorable to the judgment and disregard all contrary evidence and inferences." Ortmann v. Dace Homes, Inc. , 86 S.W.3d 86, 88 (Mo. App. E.D. 2002).
Rescission is an equitable remedy, Ehlert v. Ward , 588 S.W.2d 500, 503 (Mo. banc 1979), and it may be granted if there is a mutual mistake. See Mick v. Mays , 459 S.W.3d 924, 927 (Mo. App. S.D. 2015).
"A mutual mistake occurs when both parties, at the time of contracting, share a misconception about a basic assumption or vital fact upon which they based their bargain." Husch & Eppenberger, LLC v. Eisenberg , 213 S.W.3d 124, 134 (Mo. App. 2006) (quoting Alea London Ltd. v. Bono-Soltysiak Enterprises , 186 S.W.3d 403, 415 (Mo. App. 2006) ). "This is normally a question of fact." Id. "In a bench-tried case such as this, the trial judge is the finder of fact." Kerr v. Jennings , 886 S.W.2d 117, 125 (Mo. App. 1994).
Will Investments, Inc. v. Young , 317 S.W.3d 157, 165 (Mo. App. S.D. 2010).
Evidence and Procedural History
Evidence at trial included that in 2005, Buyers lived in a condominium adjacent to another building in which Ms. Clark's and Sellers' condominiums were located. Buyers' condominium did not include a garage, but Ms. Clark's and Sellers' condominiums included garages, which were located in a separate garage structure. In April 2005, Buyers gave Ms. Clark a $14,000 check for the Clark garage, and a "Bill of Sale" was executed to memorialize the transaction. A secretary for the Association had informed Mr. Strange how such a situation "should be handled and [the secretary] actually prepared" the Clark bill of sale.
Buyers learned from Ms. Clark's son that Sellers were also interested in selling their garage. The Association's secretary again told Mr. Strange that a bill of sale was the "recognized practice by" the Association for accomplishing such transactions. Mrs. Robinson spoke with someone in the Association office and, based upon that conversation, Sellers believed that all the parties needed to do was "agree on a price and a bill of sale." The transaction was arranged through Ms. Clark's son.
*348 Neither Buyers nor Sellers had read the Condominium Declaration or other rules governing their condominiums before engaging in the transaction. Buyers and Sellers did not speak directly with each other about the transaction before it took place.
In October 2005, Buyers delivered a $14,000 check to Sellers. A "Bill of Sale" executed by Sellers was delivered to Buyers ("the Bill of Sale"). The Bill of Sale specifically identified Sellers' garage and purported to "sell" it as "goods and chattels[.]" The Bill of Sale appeared to be a prepared form, and some spaces in the pre-printed language were left blank. However, the Bill of Sale included typed language that said that Sellers "have sold garage at [the specific address] to Wes Strange in the amount of [$]14,000 on October 19, 2005 we [sic] no longer have any interest in this property[.]"
Sellers intended to sell their garage to Buyers, Sellers believed that they had done so, and Sellers did not ever try to reclaim the garage from Buyers. After the garage transactions were completed, Buyers notified the Association of their purchases, and Buyers paid the condominium dues assessed for the garages. When Sellers subsequently sold their condominium, they "specifically excluded [their garage] from the advertising of the sale of [their] condo[.]"
Near the end of 2006, Buyers sold their condominium to third parties via a warranty deed, and Buyers also assigned their rights in the garages to the third parties. Sometime after that, the third-parties sued Buyers, alleging that Buyers "had no right to sell" the garages. As a result of settlement negotiations, Buyers had to "effectively buy back the condominium[.]"[2]
Buyers commenced the instant case in 2012. Count 1 of the petition was entitled "FRAUD AND MISREPRESENTA[T]ION [,]" and Count 2 was entitled "RESCISSION [.]" Count 2 alleged that "[a]s a result of [Sellers'] false representations, failure to convey title to [their garage], and breach of warranty, [Buyers] have been damaged in the amount of $14,000." Court 2 further alleged that "[Sellers] purported to convey to [Buyers their garage] by Bill of Sale with warranty"; "[Buyers] paid to [Sellers] the sum of $14,000 in exchange for the Bill of Sale"; Sellers "did not and could not transfer title to [their garage] in that the[ir garage] was not severable from the title to [Sellers'] condominium[,]" and Sellers "therefore did not convey or transfer anything to [Buyers.]"
Buyers and Sellers testified at trial, and various exhibits were received into evidence. Buyers presented evidence that they had incurred $3,566 in attorney fees in connection with the third-party suit and $5,000 in attorney fees in the instant case. Neither party requested specific findings of fact or conclusions of law as permitted by Rule 73.01(c).[3] Mr. Strange was the first witness. Near the end of his direct examination, the trial court declared "a five minute break" for the parties to consider records concerning the amount of money eventually repaid to third-parties as a result of the purported resale of the garages. The trial court then stated:
I'm not going to call it a windfall, but-but it is a-but it is additional *349 money on top. And one of the remedies that the [trial c]ourt has to look at is-is if there's a potential mutual-mutual mistake in putting the parties back in their original condition. I'm not saying that's the avenue the [trial c]ourt's going to take. That's just one of the potential remedies here and I need-I need to know that information. [The trial court is] going to take a five-minute recess, let you have an opportunity to review your documents, because it's important to get this right.
No objection was raised to the trial court considering the possibility of mutual mistake.
At the conclusion of the evidence, Buyers' attorney argued, "So we've got a case here where two parties are dealing-mutual mistake, Your Honor. Neither of them knew what they were dealing with." Sellers did not object to that argument. Buyers' counsel requested "a judgment for the [$]14,000[, and] ... for their attorney fees in having to chase this down."
Sellers' counsel argued that Buyers had failed to prove the elements of fraud, the Bill of Sale was simply a quit claim deed, and if there was "any type of mistake, as claimed by [Buyers' counsel], it's a mistake of law." Sellers' counsel also argued that "equitable relief of rescission" should be unavailable because "the complaining party had within their reach the means of ascertaining the true state of facts and neglected to avail themselves of the opportunities to obtain that information."
At the conclusion of the trial, the trial court remarked that it would "be happy to have both sides brief [it] on this very narrow issue-is in the-in the-under the doctrine of mutual mistake or misrepresentation, what are the allowable range of damages?" Sellers' counsel clarified that the trial court was interested in mutual mistake and misrepresentation. The trial court remarked, "Well, I say 'mutual mistake.' It's rescission. Under the doctrine of rescission.... which is interchangeable."
Sellers did not object to the trial court's request for briefing on mutual mistake or its characterization of mutual mistake as being interchangeable with rescission. The trial court's docket entry included: "[trial c]ourt requests memorandum on determination of potential damages under the theory of mutual mistake/revision [sic] and misrepresentation."
Sellers filed their "MEMORANDUM ON DAMAGES FOR FRAUD AND RESCISSION" ("Sellers' memorandum") that argued that "the remedy of rescission is not available to [Buyers]." Sellers based this on their view that Buyers failed to tender Sellers' garage back until after Sellers had sold their own condominium without the garage. Sellers' memorandum went on to assert the degree of proof necessary to establish mutual mistake, and it contended that mutual mistake was a question of law, not of fact, thereby preventing rescission. Sellers' memorandum also argued that Buyers should not prevail on a theory of fraudulent representation, and it addressed the type of damages recoverable for rescission. The memorandum did not claim that the trial court could not consider mutual mistake because that theory had not been pleaded by Buyers.
Analysis
Point 1-Trial Court's Application of Mutual Mistake
Sellers' first point claims "[t]he trial court erred in granting judgment in favor of [Buyers] and against [Sellers] on the basis of mutual mistake, because the court erroneously applied the law in that [Buyers] never plead [sic] a claim for mutual mistake and the court is prohibited from granting a judgment on the basis of a *350 claim th[at Buyers] didn't raise or inform [Sellers of] in their pleading."
Generally "[a] trial court may not enter judgment on a cause of action that a plaintiff did not plead." Rosenfeld v. Boniske , 445 S.W.3d 81, 89 (Mo. App. E.D. 2014) ("[m]utual mistake was never presented to the trial court as a theory of recovery") (quotation omitted). Buyers maintain that their petition alleged "mistake or lack of knowledge on the part of [Sellers,]" "[t]he case was tried on the theory of this factual 'mutual mistake' and [Sellers] cannot complain they were not so informed or surprised."
We need not determine whether Buyers' petition properly pleaded mutual mistake or whether the matter was tried by implied consent because Sellers never gave the trial court an opportunity to rule on the complaint Sellers now attempt to raise on appeal.
Rule 78.09 requires a party, "at the time the ruling or order of the court is made or sought, [to make] known to the court the action that the party desires the court to take or objections to the action of the court and grounds therefore." Failure to do so precludes a party from obtaining appellate review of error in the trial court's ruling or order. "It is well recognized that a party should not be entitled on appeal to claim error on the part of the trial court when the party did not call attention to the error at trial and did not give the court the opportunity to rule on the question." This requirement is intended to eliminate error by allowing the trial court to rule intelligently and to avoid "the delay, expense, and hardship of an appeal and retrial."
Brown v. Brown , 423 S.W.3d 784, 787-88 (Mo. banc 2014) (citations omitted).
Sellers had several opportunities to raise the objection to the trial court. The first appeared when the trial court informed the parties that it was considering deciding the case based upon mutual mistake. Sellers could also have raised the complaint when opposing counsel argued that the case should be decided on that ground. Finally, Sellers could have included the objection in their post-trial written memorandum. Having done none of these things, Sellers acquiesced in the trial court considering the application of mutual mistake and cannot challenge it in this appeal.
Point 2-Fraudulent Misrepresentation Not Found
Point 2 combines questions of law and fact in challenging whether false representations were made and relied upon and whether Buyers' reliance thereon was reasonable. The point is defective in combining such questions, see Ivie v. Smith , 439 S.W.3d 189, 199 n.11 (Mo. banc 2014), but, more importantly, the point is moot because it challenges a finding that the trial court did not make.
The judgment relies upon mutual mistake, not fraud. "Misrepresentation or fraud is not essential to proof of a mutual mistake." Housden v. Berns , 273 S.W.2d 794, 802 (Mo. App. S.D. 1954). Thus, a particular representation by Sellers was not the basis for the judgment. Cf. Droz v. Trump , 965 S.W.2d 436, 441 (Mo. App. W.D. 1998) (discussing the elements of fraudulent misrepresentation where the speaker is or is not aware that his representation is false).
Indeed, the trial court specifically found "that [Sellers did not intend] to defraud [Buyers]." Instead, it found that both parties "believed and though[t that] they were purchasing and selling respectively [Sellers' garage.]" No particular statements by Sellers to Buyers were critical; it is sufficient *351 for mutual mistake that the parties both thought and believed that they could and were doing something that they could not actually do. See Will Investments, Inc. , 317 S.W.3d at 165. Because the trial court did not find that Sellers had committed any fraud, Point 2 is moot.
The judgment of the trial court is affirmed.
MARY W. SHEFFIELD, P.J.-CONCURS
GARY W. LYNCH, J.-CONCURS

The judgment also awarded Buyers $14,000 from Virginia L. Clark in connection with the purported sale of another garage ("the Clark garage"). Ms. Clark did not appear at the trial, and she has not filed a brief in this appeal. Buyers' amended petition ("the petition") also asserted a claim against Pointe Royale Condominium Property Owners Association, Inc., and Pointe Royale Property Owners Association for failing to inform Buyers that a transfer of a condominium garage violated the Condominium Declaration, but this claim was dismissed via summary judgment. During the trial, the lawyers and witnesses sometimes used "Pointe Royale" without specifically identifying the intended legal entity. For purposes of simplicity and convenience, and without making findings of fact regarding the associations, we will use "the Association" for either or both associations as our analysis does not turn upon the particular role of either association.

Sellers state in their brief that the Condominium Declaration "prevents the garage from being conveyed , leased, devised or encumbered separately from the condominium unit." Buyers agree that the garage was "defined as being part of the 'unit' " and "the Declaration prohibited the sale or division of the [sic] any portion of the 'unit[.]' "

All rule references are to Missouri Court Rules (2018).