Imelda H. **LOHRMANN** and Agnes B. **Lohrmann,** Respondents,

v.

Hazel G. **CARTER,** Appellant.

No. 12967.

Missouri Court of Appeals, Southern District, Division One.

Aug. 30, 1983.

Van A. Miller, Waynesville, for appellant.

Wm. C. Morgan, Waynesville, for respondents.

CROW, Judge.

Hazel G. Carter appeals from a judgment declaring that Imelda H. Lohrmann and Agnes B. Lohrmann, sisters, own a wedge-shaped parcel of land. Hazel claims ownership by adverse possession. Her sole point is that the trial court erred in applying the law to the facts. The specifics of her complaint are discussed after our summary of the evidence.

On February 5, 1963, Hazel and her then husband, Edward J. Elliott, bought a tract of land on which a dwelling house was situated. The tract is composed of portions of lots 2 and 3 in a Waynesville subdivision.

At that time, a house was under construction on an adjoining tract, composed of the remainder of lot 2 and part of lot 1. By October 22, 1963, the house on this tract had been completed, and on that day, this tract was bought by Imelda and Agnes from the same grantors who had sold Hazel and Edward their property.

The tract purchased by Hazel and Edward lies north of the tract purchased by Imelda and Agnes. The fronts of both houses face generally west toward a street adjoining the west boundary of both tracts. The dividing line between the tracts begins at the street and runs from southwest to northeast, to the rear of the tracts. The respective legal descriptions of the tracts

are such that there is neither an overlap nor a gap anywhere along their common boundary.

Hazel testified that before she and Edward bought their property, one of their grantors showed her iron stakes at the four corners. In the fall of 1963, after she and Edward moved in, they planted trees on the south side of their property, near, but north of, the boundary shown by the stakes. In the spring of 1964, they established flowerbeds in the same area.

Hazel and Edward were divorced, apparently in late 1969 or early 1970. By deed dated January 21, 1970, Edward quitclaimed his interest in their property to Hazel. Hazel married her present husband, James Carter, March 21, 1970.

Imelda testified that when she and Agnes moved into their house in October, 1963, there was no physical evidence on the ground showing the boundary between their property and Hazel's. Imelda did not know where the line was until a 1977 survey.

Agnes testified she was likewise unaware of the location of the line until the survey.

Hazel testified that between 1963 and 1977, the trees along the boundary continued to grow, and she maintained the flowerbeds. Other witnesses corroborated this. Hazel explained she had her lawn mowed "about one mower width beyond the trees" toward the Lohrmann house, continuing this practice until time of trial. She added that the trees were sprayed and pruned only by her family.

Imelda testified that from 1963 until the early 1970's, she and Agnes mowed their lawn, and most of the time they mowed up to Hazel's house. Imelda explained they did this "for appearance's sake" because Hazel was not mowing her lawn, and because they were afraid of snakes. According to Imelda, she and Agnes raked Hazel's leaves almost every fall until Hazel married James. In the early 1970's, Imelda and Agnes hired a man to do their mowing, and, at the request of Hazel and James, Imelda had the man mow Hazel's lawn at the same time. Imelda did not recall Hazel ever having the trees trimmed; Imelda said she (Imelda) did that "all these years."

Agnes corroborated Imelda's testimony about the mowing and tree trimming.

Imelda testified she "instigated" the 1977 survey because a lot at the rear of her property was "in an estate," and had been in dispute for several years. Hoping to avoid involvement in that quarrel, she decided to have her property surveyed so she and Agnes could put up a fence between their property and the lot in the estate. Several other residents in the neighborhood, including Hazel and James, decided to have their property surveyed at that time. John Mackey, a civil engineer and registered land surveyor, was retained by the group to do the surveys.

Mackey found no pins marking the line between Hazel's property and the Lohrmann property. When Mackey established the line between those properties, he staked the west end of the line some six to seven feet north of where Hazel believed it should be. Evidently, Hazel agreed with where Mackey staked the east end of the line. According to the line fixed by Mackey, the trees and flowerbeds were on the Lohrmann property.

Imelda testified that after Mackey's survey, Hazel said she wanted to buy some of the Lohrmanns' land. Hazel denied this. No sale occurred.

Imelda recalled that after the survey, she instructed the people who mowed her lawn to mow to the line established by Mackey.

In 1978, Imelda and Agnes had one of the trees in the disputed area removed because it was puny and had dead branches. Hazel testified she did not approve of this, but admitted she made no complaint to the Lohrmanns.

In 1979 or 1980, the Lohrmanns, after several complaints to Hazel's husband, James, that the flowerbeds were unkempt, "just mowed them down."

On February 4, 1980, Imelda and Agnes decided to remove two more trees in the disputed area. When the tree crew arrived,

the Lohrmanns received a telephone call from Hazel's attorney. As a result of that call, the trees were left intact.

A few weeks later, Imelda and Agnes filed this action against Hazel, praying that Hazel be enjoined from entering the land south of the line established by Mackey, and asking the court, by declaratory judgment, to fix and determine the boundary between the two tracts.

Hazel counterclaimed, alleging that from and after February 5, 1963, she occupied and claimed ownership of the parcel between the Mackey line and the line she was shown when she bought her property. Hazel alleged the Lohrmanns made no claim to that parcel until March, 1980. Hazel sought a decree adjudicating her to be the owner of the parcel by adverse possession.

Before trial, Robert Elgin, a civil engineer and registered land surveyor, surveyed the disputed area for Hazel. Elgin established the west end of the dividing line some six feet south of the pin set by Mackey. Elgin agreed with the location of Mackey's pin at the east end of the line. According to the line established by Elgin, the trees and the area where the flowerbeds had been are on Hazel's property. Elgin's line is just slightly north of the line Hazel claims she was shown in 1963.

Because both the Mackey line and the Elgin line run from southwest to northeast, and because both terminate on the east at the same point, the Elgin line, beginning further south than the Mackey line on the west, is longer. The Elgin line is 151.08 feet long; the Mackey line 147.64 feet. Thus, the three-sided parcel in dispute has a west dimension of between 6 and 7 feet, a north side measuring not quite 148 feet, and a south side running just over 151 feet.

The trial court decreed that the Mackey line is the correct boundary between Hazel's property and the Lohrmann property, and that Hazel has no right, title or interest in any land south of the Mackey line. The court denied the Lohrmanns' request for injunctive relief, and dismissed Hazel's counterclaim.

Hazel bases her assignment of error on a colloquy between her attorney and the trial court near the end of the trial. The attorney asked whether the court intended to take the case under advisement, then this occurred:

"THE COURT: Well, yeah. I think I will. And I—I want to sit down and just go through all the exhibits. But one thing sort of worries me on this adverse possession claim is whether or not you can adversely possess something against someone who disclaims any knowledge of where their boundaries are. Maybe you can, I don't know. But I—

MR. COHN: Yeah. I'll—

THE COURT: The thought had never occurred to me that we might be in a situation like this. But—

MR. COHN: I'll look for—

THE COURT: the two sisters are claiming they don't have any knowledge of where the boundaries ever were. It might be hard to show a hostile possession under those circumstances. I don't know. It worries me right now.

MR. COHN: Yeah.

THE COURT: And I'd appreciate anything you can find on that. And then I won't get around to looking at this seriously until about the end of next week anyway,—

MR. COHN: All right.

THE COURT: —as far as looking at the exhibits and making a decision on the thing. So if you can give me something between now, say, and the next ten days, why I'd appreciate it.

MR. COHN: Okay."

Trial ended August 13, 1982. Judgment was entered September 13, 1982.

Hazel does not attack the trial court's choice of the Mackey line over the Elgin line. Her complaint is simply that the trial court erred in dismissing her counterclaim. She asserts she acquired ownership of the disputed parcel by adverse possession, regardless of where the true boundary lies.

Hazel argues that the trial court's remarks amount to an erroneous application

of the law to the facts. She says the court concluded that inasmuch as neither Imelda nor Agnes knew the location of the common boundary, Hazel's possession of the disputed parcel could not be hostile.

Hazel asserts that for possession to be hostile, the law does not require the record owner to know where the boundary lies, or to be aware that the land occupied by the claimant is land to which the owner holds record title. Hazel contends it is likewise unnecessary that the claimant intend to deprive the record owner of the land. Hazel says the law requires only that the claimant intend to occupy the land as his own. She argues that she occupied the disputed parcel, with the requisite intent, continuously since 1963.

■ The record contains no request by either side to the trial court for findings of fact or conclusions of law. Rule 73.-01(a)(2).[1] In such circumstances, if the court makes no findings of fact or conclusions of law, all facts are presumed found in accord with the judgment, and the judgment is to be upheld under any reasonable theory presented and supported by the evidence. *McKnight v. McKnight,* 638 S.W.2d 789, 790[1] (Mo.App.1982); *Brunswick Corp., Mercury Marine Div. v. Hering,* 619 S.W.2d 950, 952[2] (Mo.App.1981); *Molasky Enterprises, Inc. v. Carps, Inc.,* 615 S.W.2d 83, 86[1] (Mo.App.1981). However, if the trial court in a court-tried case does make findings of fact and conclusions of law, without request, those findings and conclusions form a proper basis for assigning error and can be reviewed on appeal. *Graves v. Stewart,* 642 S.W.2d 649, 651[3] (Mo. banc 1982).

The trial court filed no written findings of fact or conclusions of law, and dictated none into the record. Rule 73.01(a)(2). But for the court's remarks to Hazel's attorney, the record would be bare of anything arguably constituting a finding of fact or conclusion of law. Hazel does not contend otherwise. Her assignment of error is directed solely to the court's remarks. Ac-

cordingly, we must determine the effect, if any, of those remarks on the judgment.

■ We do not accept Hazel's contention that the trial court denied her counterclaim on the ground that she could not prevail unless the Lohrmanns knew where the boundary was. The trial court's comments, in our opinion, were nothing more than an expression of uncertainty about the law on that point. Nothing in the court's comments suggests that the court had a mindset to deny the counterclaim for that reason. Indeed, the record belies such an assumption. After professing concern about the point, the court invited briefs from counsel, stating that no decision would be made until after the time allowed for briefing. A month elapsed between the end of the trial and entry of the judgment, ample time for the court to study the law and dispel any misunderstanding or uncertainty. Nowhere in the judgment is there any implication that Hazel's counterclaim was denied for the reason she supposes.

Hazel cites no case holding that remarks like those of the trial court here constitute conclusions of law. There are few Missouri cases on the subject; however, in *Meridian Lumber Co., Ltd. v. Lowry Lumber Co.,* 207 Mo.App. 41, 229 S.W. 267 (1921), the trial court made a statement about the absence of merit in a counterclaim, in terms much more conclusive than the court's remarks in the instant case. *Meridian* held the court's statement was merely an expression of the court's attitude about the counterclaim and did not reach the dignity of a special finding or declaration of law. 229 S.W. at 268.

In an earlier case, *Jordan v. Davis,* 172 Mo. 599, 72 S.W. 686 (1903), at the time the trial court rendered judgment, the court issued a memorandum stating that certain items of a counterclaim were barred by the statute of limitations, and that certain other items should be allowed in various amounts. *Jordan* held the memorandum was not a declaration of law, but simply an announcement of the conclusion reached by the court in order that the clerk, in writing the judgment, might understand it. 72

---

1. Rule references are to Missouri Rules of Civil Procedure, 1982.

S.W. at 689. If the memorandum in *Jordan* did not constitute conclusions of law, neither did the court's remarks in the instant case.

A trial court should be free to call legal issues to counsels' attention and request briefs, without the remarks being treated as conclusions of law. We hold that the trial court's remarks here do not constitute conclusions of law, hence we do not consider them in our review.

We must affirm the judgment if it is supported by substantial evidence, is not against the weight of the evidence, and the trial court did not erroneously declare or apply the law. *Sanders v. DeLoire Corporation,* 634 S.W.2d 225, 226[1] (Mo.App. 1982). Furthermore, as noted earlier, absent findings of fact and conclusions of law, we resolve all fact issues in accordance with the trial court's judgment, and affirm it if it can be supported on any reasonable theory of law in accordance with the evidence. *Id.* at 226[2].

There is substantial evidence to support the trial court's finding that the Mackey line is the correct boundary between the Lohrmann property and Hazel's property. That finding is not against the weight of the evidence. It cannot, therefore, be disturbed. *Murphy v. Carron,* 536 S.W.2d 30, 32[1] (Mo. banc 1976).

In order to establish ownership of the disputed parcel by adverse possession under § 516.010, RSMo 1978, Hazel had the burden of proving her possession was (1) hostile, that is, under a claim of right, (2) actual, (3) open and notorious, (4) exclusive, and (5) continuous, for 10 years prior to commencement of her action to perfect title by adverse possession. *Walker v. Walker,* 509 S.W.2d 102, 106[1] (Mo.1974).

There is competent and substantial evidence that the Lohrmanns, from and after 1963, mowed the disputed parcel or had it mowed, trimmed the trees situated there and removed one, and raked the leaves for several years until Hazel married James. The area was never fenced, and there is competent and substantial evidence that there was never a marker showing the boundary of the land claimed by Hazel until after suit was filed.

We do not ignore Hazel's evidence that she had the disputed area mowed from and after 1963, maintained the flowerbeds, and trimmed the trees. The trial court, however, was not required to believe that evidence. The trial court, as trier of the facts, had leave to believe none, part or all of the testimony of any witness. *Husky Industries, Inc. v. Craig Industries, Inc.,* 618 S.W.2d 458, 460 (Mo.App.1981).

The trial court could have reasonably found that the Lohrmanns—either alone or in conjunction with Hazel—used, maintained, occupied and exercised dominion over the disputed parcel from and after 1963. Whether the Lohrmanns' possession was exclusive, or shared with Hazel, is immaterial. Either way, Hazel's claim fails. Possession, to be adverse, must be exclusive; the rightful owner cannot be deprived of title by possession of another if the owner is also in possession with the adverse claimant, as joint possession is not adverse. *Tallent v. Barrett,* 598 S.W.2d 602, 606[5] (Mo.App.1980). Joint possession with the owner is not sufficient to support title by adverse possession. *Fiorella v. Jones,* 259 S.W. 782, 785 (Mo.1924). The owner must be wholly excluded from possession by the claimant for the required period. *Id.*

There is, consequently, on this record, a reasonable theory supported by the evidence under which the judgment is correct. Accordingly, we must affirm. *Ware v. Ware,* 647 S.W.2d 582, 584[3] (Mo.App. 1983); *Western Casualty & Surety Co. v. Kohm,* 638 S.W.2d 798, 799[2] (Mo.App. 1982).

Judgment affirmed.

GREENE, C.J., FLANIGAN, P.J., and TITUS, J., concur.