MIDWEST BANKCENTRE,
Respondent,

v.

OLD REPUBLIC TITLE COMPANY
OF ST. LOUIS, Appellant,

and

Rising Phoenix Development, LLC,
and William Schierholz, III,
Respondents.

No. ED 89263.

Missouri Court of Appeals,
Eastern District,
Division Three.

March 11, 2008.

Gregory F. Herkert, Saint Louis, MO, for Respondent Midwest BankCentre.

Douglas P. Roller, Nicholas P. Van Deven, Saint Louis, MO, for Appellant Old Republic Title Co. of St. Louis, Inc.

William Schierholz, III, Chesterfield, MO, for Respondent Acting Pro Se.

## OPINION

GLENN A. NORTON, Judge.

Old Republic Title Company of St. Louis appeals the judgment in favor of Midwest Bankcentre on Midwest Bank's negligence claim, and in favor of William Schierholz, III ("Son") and Rising Phoenix Development, L.L.C.[1] on Old Republic's cross-claims for breach of contract, fraudulent misrepresentation, and negligent misrepresentation. We affirm.

## I. BACKGROUND

In 2001, Son and William Schierholz, Jr. ("Father") were members of the limited liability company Rising Phoenix. During this time, Son, a real estate developer and builder, sought to purchase a piece of property located at 1841 Kehrs Mill Road in Wildwood, Missouri ("Wildwood Property") on behalf of Rising Phoenix. Rising Phoenix sought financing for this purchase from Midwest Bank. Midwest Bank approved a loan to Rising Phoenix in the amount of $950,000.00 ($800,000.00 for the purchase price of the Wildwood Property and $150,000.00 for renovations). In addition to pledging the Wildwood Property as collateral for the loan, Rising Phoenix also pledged a piece of property located in Lake St. Louis, Missouri ("Lake St. Louis Property") as collateral.

Gerard Geen, a loan officer at Midwest Bank, handled Rising Phoenix's purchase of the Wildwood Property. Geen's assistant, Melissa Hartsell, prepared and documented Midwest Bank's loan to Rising Phoenix. Prior to closing on the loan, Hartsell created a promissory note, a deed of trust in connection with the Wildwood Property ("Wildwood Deed of Trust"), and a deed of trust for the Lake St. Louis Property ("Lake St. Louis Deed of

---

1. We note that neither Son nor Rising Phoe-    nix have filed a Respondent's brief.

Trust").[2] The upper left-hand corner of the first page of both deeds of trust contained the following language:

RECORDATION REQUESTED BY:
[Midwest Bank]
[Midwest Bank's address]
WHEN RECORDED MAIL TO:
[Midwest Bank]
[Midwest Bank's address]

Old Republic was the title company retained to handle the closing on the Wildwood Property. Prior to closing, Midwest Bank sent Old Republic closing instructions and an application for title insurance for the Lake St. Louis Property. The closing instructions: (1) referenced Midwest Bank's $950,000.00 loan to Rising Phoenix; (2) referenced two properties: "1841 Kehrs Mill Road & a tract of land in Lak [sic];" and (3) stated "[w]e have 2 deeds of trust one is 8 pages and the other is 9 pages." The application for title insurance for the Lake St. Louis Property was for coverage in the amount of $190,000.00.

Old Republic issued a title commitment for the Lake St. Louis Property prior to the closing on the Wildwood Property. Additionally, Old Republic prepared a settlement statement,[3] which was later reviewed and approved by Geen on behalf of Midwest Bank. The settlement statement identifies the "property location" as "1841 Kehrs Mill Road" in "Wildwood, MO." It also identifies a title insurance charge of $1395.50, which included lender's coverage in the amount of $950,000.00 (the full amount of the loan) and owner's coverage in the amount of $800,000.00 (the purchase price of the Wildwood Property). The settlement statement also included a record-

ing fee for a deed ($24.00), a recording fee for a "mortgage" ($48.00), and a recording fee for a UCC statement ($29.00).

The closing took place on September 13, 2001, at Old Republic's offices. Geen was present as the loan officer for Midwest Bank, Paula Warmoth was present as the closing agent for Old Republic, and Son was present on behalf of the borrower Rising Phoenix. Son, as "managing member" of Rising Phoenix, executed a promissory note in favor of Midwest Bank. The Wildwood Deed of Trust and the Lake St. Louis Deed of Trust both were executed by Son in favor of Midwest Bank and were notarized by Warmoth. Son and Warmoth also signed the settlement statement.

Following closing, Old Republic recorded the Wildwood Deed of Trust with the recorder of deeds of St. Louis County. The Lake St. Louis Deed of Trust was never recorded. Additionally, a title insurance policy was never issued on the Lake St. Louis Property.

In July 2002, Rising Phoenix sold the Wildwood Property. Midwest Bank received $827,899.08 from the closing, but this amount was less than that still owed on the loan.

On December 13, 2002, Rising Phoenix sold the Lake St. Louis Property. Old Republic was the title company retained to handle the closing on the Lake St. Louis Property. Midwest Bank did not receive any of the proceeds from the closing of the sale of the Lake St. Louis Property. Son signed a settlement statement, a general warranty deed, and a final affidavit for this sale. The final affidavit was "made for the purpose of aiding Old Republic Title Company of St. Louis, Inc. in determining the

---

**2.** The Lake St. Louis Deed of Trust is what is referred to as a "collateral deed of trust," a deed of trust on real property other than that being purchased with the loan proceeds.

**3.** A settlement statement contains a financial snapshot of a transaction, identifying items including the contract sales price, settlement charges, title fees, and recording fees.

marketability and insurability of title to the property, and to induce the Company to issue its policies of title insurance. . . ." The final affidavit contained the following representation: "There are no unrecorded claims against the property, nor any set of facts by reason of which title to the property might be disputed or questioned. . . ." The final affidavit subsequently stated: "the affiant states that the foregoing statements are true and correct to the best of affiant's knowledge and belief."

Between September 13, 2002, and June 10, 2004, several renewals of the September 13, 2001 loan took place. Son signed each of the renewals, some of which listed the Wildwood Deed of Trust and Lake St. Louis Deed of Trust as collateral even after those properties were sold.

Sometime around June 2004, Timothy Reeves, the chief credit officer for Midwest Bank, was advised that the Lake St. Louis Property had been sold. By September 2004, Reeves was advised that the Lake St. Louis Deed of Trust had not been recorded. The original Lake St. Louis Deed of Trust was never located.

Thereafter, Midwest Bank filed claims against Old Republic for, *inter alia*, negligence, breach of contract, and breach of fiduciary duty, alleging that it suffered damages because Old Republic failed to record the Lake St. Louis Deed of Trust.[4] In its answer, Old Republic pled the affirmative defense of contributory negligence. Thereafter, Old Republic filed cross-claims

against Son, Father, and Rising Phoenix for breach of contract, fraudulent misrepresentation, and negligent misrepresentation, alleging that it suffered damages as a result of misrepresentations in connection with the December 13, 2002 closing of the Lake St. Louis Property.

In October 2006, the trial court held a bench trial on Midwest Bank's claims and on Old Republic's cross-claims. Old Republic conceded in its post-trial brief that it did not prove Father's liability on its cross-claims. Although neither party requested findings of fact or conclusions of law, the trial court made some findings of fact and conclusions in its amended judgment. Specifically, the trial court ruled: (1) in favor of Midwest Bank and against Old Republic on Midwest Bank's negligence claim because "Old Republic owed a duty to [Midwest Bank] and it is more likely than not [that] Old Republic breached that duty by failing to record the Lake St. Louis Deed of Trust . . . and such negligence caused damage to [Midwest Bank];" (2) in favor of Old Republic on Midwest Bank's claims for breach of contract and breach of fiduciary duty;[5] (3) in favor of Son on Old Republic's cross-claims because Old Republic "acknowledges in its post trial brief [that] it has no evidence on its claim against Defendant Son";[6] (4) in favor of Father on Old Republic's cross-claims (i) because "Old Republic knew or should have known of the Lake St. Louis

---

**4.** Midwest Bank acknowledges in its brief that these three counts are in the alternative to each other even though they were not specifically denominated as such in its petition.

**5.** The trial court concluded that to the extent that Midwest Bank's other counts are in the alternative to Midwest Bank's negligence claim, they are denied. As stated previously, Midwest Bank admits that its breach of contract and breach of fiduciary duty claims were in the alternative to its negligence claim.

**6.** The record in fact reveals that Old Republic acknowledged in its post-trial brief that it has no evidence on its claim against *Father* (William Schierholz, Jr.). The trial court's mistaken finding that Old Republic conceded its case against *Son* (William Schierholz, III) rather than Father will be discussed in Section C.

Deed of Trust, and could not have reasonably relied on any representations of Father, who was in a much inferior position to know if the Lake St. Louis Deed of Trust had been recorded," and (ii) because the court previously found that Old Republic had a duty to record the Lake St. Louis Deed of Trust, Old Republic's "own negligence was the cause of that Deed of Trust not being satisfied from the sale proceeds of the property;" and (5) in favor of Rising Phoenix on Old Republic's cross-claims "[b]ased upon a preponderance of the evidence." Old Republic appeals.

## II. DISCUSSION

### A. Standard of Review

Our review of a court-tried case is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We will affirm the trial court's judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. Id. We view the evidence and all reasonable inferences therefrom in the light most favorable to the trial court's judgment, and we disregard all evidence and inferences to the contrary. *Sheppard v. East*, 192 S.W.3d 518, 522 (Mo.App. E.D.2006).

Because of the trial court's superior ability to assess the credibility of witnesses, we defer to any of the trial court's findings of fact. Id. When neither party requests findings of fact or conclusions of law, "[a]ll fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached." Rule 73.01(c).[7] Our review of questions of law is *de novo*. *Sheppard*, 192 S.W.3d at 522.

Our primary concern is the correctness of the trial court's result rather than the route taken by the trial court to reach that result. *Business Men's Assurance Co. of America v. Graham*, 984 S.W.2d 501, 506 (Mo. banc 1999). Accordingly, we will affirm the trial court's judgment if it can be supported on any reasonable theory of law in accordance with the evidence, regardless of whether the reasons advanced by the trial court are wrong or insufficient. Id.; *Lohrmann v. Carter*, 657 S.W.2d 372, 377 (Mo.App. S.D.1983).

### B. Midwest Bank's Negligence Claim against Old Republic

In its first two points on appeal, Old Republic contends that the trial court erred in entering judgment in favor of Midwest Bank on Midwest Bank's negligence claim against Old Republic. Old Republic argues that it did not owe a duty to Midwest Bank to record the Lake St. Louis Deed of Trust, and that the trial court erred by failing to expressly analyze Old Republic's affirmative defense of contributory negligence in the trial court's judgment. We disagree.

#### 1. The Issue of Whether Old Republic Had a Duty to Record the Lake St. Louis Deed of Trust

In its first point on appeal, Old Republic maintains that the trial court's finding that Old Republic owed Midwest Bank a duty to record the Lake St. Louis Deed of Trust erroneously declared the law and was against the weight of the evidence.

In any negligence action, the plaintiff·must demonstrate that the defendant had a legal duty to protect the plaintiff from injury, that the defendant failed to carry out that duty, and that the defendant's failure proximately caused injury to the plaintiff. *Cupp v. National Railroad Passenger Corp.*, 138 S.W.3d 766, 771 (Mo.

7. All references to Rules are to Missouri Supreme Court Rules (2007).

App. E.D.2004). The question of whether a party is negligent depends upon the surrounding circumstances and the particular conduct involved. *Scheibel v. Hillis,* 531 S.W.2d 285, 288 (Mo. banc. 1976). Thus, a party's act or omission that would clearly be negligent in some circumstances might not be negligent in others. *Id.*

▮ Whether a legal duty exists is a question of law. *Cupp,* 138 S.W.3d at 771. A legal duty owed by one party to another may arise under at least three sources: (1) the legislature; (2) the law; or (3) a contract (agreement). *Id.* "[T]he law imposes a duty based on the relationship between the parties or because under a particular set of circumstances an actor must exercise due care to avoid foreseeable injury." *Id.*

### a. State Resources Corp. v. Lawyers Title Insurance Corp.

Old Republic asserts that it did not owe Midwest Bank a legal duty to record the Lake St. Louis Deed of Trust, citing *State Resources Corp. v. Lawyers Title Insurance Corp.,* 224 S.W.3d 39 (Mo.App. S.D. 2007). In *State Resources,* parties entered into a commitment for a loan with a bank. *Id.* at 42. The loan was secured by a single collateral deed of trust on two separate parcels of real property, one located in Greene County, Missouri and one located in Camden County, Missouri. *Id.* The bank requested one title agent, Evans, to prepare a title insurance commitment for the Greene County property and another title agent, Chalfant, to prepare a title insurance commitment for the Camden County property. *Id.* Evans recorded the deed of trust in Greene County, but neither title agent recorded the deed of trust in Camden County. *Id.* at 43. The bank filed an action against the title agents for breach of contract, breach of fiduciary duty, and negligence. *Id.* at 44. The Southern District affirmed the trial court's

judgment in favor of the title agents on all of the bank's claims because there was sufficient evidence that neither agent had a contractual, fiduciary, or common law duty to record the deed of trust in Camden County. *Id.* at 48–49. In affirming the trial court's judgment in favor of the title agents on the bank's negligence count, the Southern District found that "there is little, persuasive evidence of any written or verbal evidence [sic] that either Evans or Chalfant had an obligation to record the [d]eed of [t]rust in Camden County or that they were ever told by the [b]ank to do so." *Id.* at 49.

In the *State Resources* case, there were two title agents involved in the loan transaction and there were two properties listed on one deed of trust. *Id.* at 42. Although title agent Chalfant never received an original or a copy of the deed of trust, title agent Evans received an original of the deed of trust and recorded it in Greene County. *Id.* at 43, 45.

The upper left-hand corner of the first page of that deed of trust contained the following language:

RECORDATION REQUESTED BY:
[the bank]
[the bank's address]
WHEN RECORDED MAIL TO:
[the bank]
[the bank's address]

*Id.* at 42–43. The bank's witness testified that such language was "standard" language from the bank's documentation system, and signified that the deed of trust should be mailed back to the bank after it had been recorded. *Id.* at 42, 45. The bank's witness also testified that there were no written communications between the bank and the title agents regarding the issue of recordation of the deed of trust in Camden County, and that he could not recall any specific communication with ei-

ther title agent as to how the deed of trust should be recorded. *Id.* at 42, 49.

Additionally, the invoice for the title insurance commitment for the Camden County property did not reflect a fee for recording the deed of trust in Camden County. *Id.* at 42 n. 6. The Southern District found that the evidence was inconclusive as to whether the recording fee that title agent Evans collected reflected the cost of recording the deed of trust in both Greene and Camden Counties. *Id.* at 47.

#### b. *State Resources* is Distinguishable from the Circumstances of this Case

We find that *State Resources* is distinguishable from the circumstances of this case.

First, instead of there being one deed of trust and two title agents involved as there was in *State Resources,* here there were two separate deeds of trust (the Wildwood Deed of Trust and the Lake St. Louis Deed of Trust) and only one title agent (Warmoth) involved in the closing of the Wildwood Property. *See id.* at 42. As previously noted, the Wildwood Deed of Trust was recorded, but the Lake St. Louis Deed of Trust was not.

■ Second, in *State Resources,* one title agent possessed the deed of trust while the other title agent did not. Id. at 43, 45. Here, the trial court concluded, albeit implicitly, that the only title company involved, Old Republic, had possession of the Lake St. Louis Deed of Trust after closing. The trial court specifically found that:

> [N]either party has any direct evidence as to whether [Midwest Bank] took back the Lake St. Louis Deed of Trust from the closing at Old Republic on September 13, 2001, and [Midwest Bank] was to record it, or whether the Deed of Trust was left by [Midwest Bank] with Old Republic for it to record. The Court

finds the testimony of [Midwest Bank's] expert credible and persuasive.

Midwest Bank's expert, Jack Forsythe, opined that Old Republic had possession of the Lake St. Louis Deed of Trust after closing. Forsythe based his opinion on: (1) his own experience working in the title industry; (2) Geen's deposition testimony that it was his practice, as a loan officer at Midwest Bank, to leave deeds of trust at the title company for purposes of recording; and (3) Warmoth's testimony regarding her role as a title agent for Old Republic. Because the trial court found that Forsythe was credible, it is reasonable to infer that the court concluded that Old Republic had possession of the Lake St. Louis Deed of Trust after closing. We find that this conclusion, which is based on circumstantial evidence, may be fairly and reasonably inferred from Forsythe's testimony, Geen's testimony, and Warmoth's testimony. *See Harris v. Woolworth,* 824 S.W.2d 31, 32 (Mo.App. E.D.1991) (finding that a plaintiff may prove essential facts of a negligence action by circumstantial evidence so long as the facts proved and the conclusions to be drawn therefrom are so related to each other that the conclusions may be fairly inferred).

Third, the language on the deeds of trust and the closing instructions gave specific instructions regarding recordation. The upper left-hand corner of the first page of both deeds of trust contained the following language:

> RECORDATION REQUESTED BY:
> [Midwest Bank]
> [Midwest Bank's address]
> WHEN RECORDED MAIL TO:
> [Midwest Bank]
> [Midwest Bank's address]

Although this language is nearly identical to the language in the upper left hand corner of the first page of the deed of trust

in *State Resources*, here there is no testimony, as there was in *State Resources*, that this language is "standard" or as to what this language signifies. *See State Resources*, 224 S.W.3d at 45. Thus, the trial court could have reasonably found that this language speaks for itself: that Midwest Bank requested recordation by Old Republic and that the deeds of trust should be mailed to Midwest Bank after it was recorded.

In addition to the language in the upper left hand corner of the first page of both deeds of trust, Midwest Bank sent written closing instructions to Old Republic. The closing instructions referenced Midwest Bank's $950,000.00 loan to Rising Phoenix, and referenced two properties: "1841 Kehrs Mill Road & a tract of land in Lak [sic]." The instructions also stated "[w]e have 2 deeds of trust one is 8 pages and the other is 9 pages." Although the closing instructions only referred to the second piece of property as "a tract of land in Lak," the trial court could have reasonably found that Old Republic understood that this language referred to the Lake St. Louis Property from documents it had in its possession prior to the closing of the Wildwood Property. Specifically, the application for title insurance identified the Lake St. Louis Property as "4.568 acres" of "raw land" "at the Southwest Corner of Lake St. Louis Blvd and South of Henke Road." And the commitment for the loan policy of title insurance for the Lake St. Louis Property identified the legal description of the property and "[a] tract of land in . . . St. Charles County" with an address in "Lake St. Louis, Missouri."

Moreover, Forsythe, whom the trial court specifically found credible, testified that the closing instructions were sufficient. Even more importantly, Warmoth, Old Republic's title agent, also indicated that the closing instructions were suffi-

cient. Warmoth was asked in her deposition, "[I]t's pretty clear [from the closing instructions] that you were being instructed to record two deeds of trust, isn't it?" She responded, "[y]es, it is." Thus, the trial court could have reasonably found that in this case, there were written closing instructions that instructed Old Republic to record the Lake St. Louis Deed of Trust in addition to the Wildwood Deed of Trust. This is in contrast to *State Resources*, where there were no written instructions directing either title agent to record the deed of trust in Camden County. *State Resources*, 224 S.W.3d at 49.

Fourth and finally, *State Resources* is distinguishable because there is evidence in this case about recording fees that was not present in the *State Resources* opinion. In *State Resources*, the evidence as to whether there were sufficient recording fees was inconclusive, and there was not any evidence as to whose mistake may have led to insufficient fees being collected. *Id.* at 47. In contrast, here there is evidence that it was Old Republic's mistake that led to insufficient fees being collected for the recordation of both the Wildwood Deed of Trust and the Lake St. Louis Deed of Trust.

■ Old Republic is the party who calculated the recording fees. Warmoth, Geen, and Forsythe all testified that recording fees are calculated based upon the number of pages in the document to be recorded. As noted above, the closing instructions to Old Republic stated that there were two deeds of trust and listed the number of pages for each document. Warmoth testified in her deposition she "did not charge enough for recording both deeds of trust" even though she "had sufficient information to include the correct recording fees . . . [f]or two deeds of trust." As to why Old Republic did not charge enough for recording both deeds of

trust, Warmoth testified that she would sometimes "guess" as to the amount of the fees to charge and stated that "[a] mistake could have been made." In addition, Forsythe testified that it is possible that title insurance companies bill customers for recording fees after closing. Based on this evidence, the trial court could have reasonably found that it was Old Republic's mistake that led to insufficient fees being collected for the recordation of both the Wildwood Deed of Trust and the Lake St. Louis Deed of Trust.

For the above reasons, *State Resources* is distinguishable from the circumstances of this case.

### c. The Law Imposed a Duty on Old Republic to Record the Lake St. Louis Deed of Trust under the Particular Circumstances of this Case

█ We turn now to whether Old Republic had a duty to record the Lake St. Louis Deed of Trust. The law imposed a duty on Old Republic to record the Lake St. Louis Deed of Trust under the particular circumstances of this case if Old Republic was required to exercise due care to avoid foreseeable injury to Midwest Bank. *See Cupp, supra.*

█ In determining whether a duty exists under a particular set of circumstances, this Court must weigh the foreseeability of the injury, the likelihood of the injury, the magnitude of the burden of guarding against the injury, and the consequences of placing that burden on the defendant. *Hoffman v. Union Electric Co.*, 176 S.W.3d 706, 708 (Mo. banc 2005). The Missouri Supreme Court has defined "foreseeability" as "the presence of some probability or likelihood of harm sufficiently serious that ordinary persons would take precautions to avoid it." *Lopez v. Three Rivers Electric Cooperative, Inc.*, 26 S.W.3d 151, 156 (Mo. banc 2000). The test for determining whether an injury is foreseeable is whether there exists "some probability of sufficient moment" that an injury could occur, which would induce a reasonable mind to take precautions to avoid it. *Id.* (internal quotation omitted).

As noted above in Section B(1)(b), in this case: (1) there were two separate deeds of trust; (2) there was one title agent involved in the closing on the Wildwood Property; (3) the trial court implicitly found that Old Republic had possession of the Lake St. Louis Deed of Trust after closing; (4) there was language requesting recordation, both on the upper left hand corner of the first page of both deeds of trust and in separate written closing instructions; (5) the trial court could have reasonably found that the language on the upper left hand corner of the first page of the Lake St. Louis Deed of Trust and the language in the closing instructions instructed Old Republic to record the Lake St. Louis Deed of Trust; and (6) the trial court could have reasonably found that it was Old Republic's mistake that led to insufficient fees being collected for the recordation of both the Wildwood Deed of Trust and the Lake St. Louis Deed of Trust.

Based upon the particular circumstances here, the injury to Midwest Bank was both foreseeable and likely. Forsythe testified that if the Lake St. Louis Deed of Trust had been properly recorded, it would have appeared on the real estate records at the time the Lake St. Louis Property was sold. In addition, other intervening deeds of trust on the Lake St. Louis Property had been recorded by the time Rising Phoenix sold the Lake St. Louis Property. The trial court could have reasonably found that these other intervening deeds of trust would have priority status in recovering the proceeds from the sale of the Lake St. Louis Property because the Lake St. Louis

Deed of Trust was unrecorded. Thus, we find there was a probability of sufficient moment that an injury to Midwest Bank would occur if the Lake St. Louis Deed of Trust was not recorded. We also find that a reasonable title insurance company in the position of Old Republic, who, according to Warmoth's deposition testimony, was instructed to record the Lake St. Louis Deed of Trust, would have recorded it, thereby taking precautions to avoid the likely injury to Midwest Bank.

As to the magnitude and consequences of imposing a duty to record on Old Republic, Forsythe testified that, "[o]ne of the most core functions of the title company is to record ... a deed of trust." Based upon this testimony, we find that it would only be a small burden, if any, for Old Republic to have the duty to record the Lake St. Louis Deed of Trust under the particular circumstances of this case. Also, because Old Republic's duty to record the Lake St. Louis Deed of Trust is confined to the particular circumstances of this case, the consequences of placing this burden on Old Republic is minimal.

We hold that under the particular set of circumstances in this case, Old Republic had a duty to record the Lake St. Louis Deed of Trust because Old Republic was required to exercise due care to avoid foreseeable injury to Midwest Bank. Therefore, the trial court did not err in finding that Old Republic owed Midwest Bank a duty to record the Lake St. Louis Deed of Trust. Point one is denied.

### 2. Old Republic's Affirmative Defense

In its second point on appeal, Old Republic maintains that the trial court erred by failing to expressly analyze Old Republic's affirmative defense of contributory negligence[8] in the trial court's judgment.

The trial court did not make express findings of fact and conclusions of law regarding the affirmative defense of contributory negligence. However, the trial court implicitly ruled that, although pleaded, it was not applicable. *See Kopff v. Economy Radiator Service,* 838 S.W.2d 449, 454 (Mo.App. E.D.1992) (finding that when the trial court did not make express findings of fact and conclusions of law regarding the affirmative defenses of laches and detrimental reliance, the court implicitly ruled that, although pleaded, they were not applicable). Moreover, as previously stated above in our discussion of the standard of review, when, as here, neither party requests findings of fact or conclusions of law, "[a]ll fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached." Rule 73.01(c).

Because the trial court implicitly ruled that the affirmative defense of contributory negligence was not applicable, and because neither party requested findings of fact or conclusions of law, the trial court did not err by failing to expressly analyze Old Republic's affirmative defense of contributory negligence in the court's judgment. Point two is denied.

### C. Old Republic's Breach of Contract, Fraudulent Misrepresentation, and Negligent Misrepresentation Cross–Claims against Son and Rising Phoenix

In its third point on appeal, Old Republic argues that the trial court's judgment in

---

8. Midwest Bank contends that "comparative fault" is the proper name for Old Republic's affirmative defense. Whether "contributory negligence" or "comparative fault" is the proper name for Old Republic's affirmative defense is not relevant to the disposition of this point on appeal. Thus, we decline to address this issue and will refer to Old Republic's affirmative defense as "contributory negligence" simply for purposes of this appeal.

favor of Son and Rising Phoenix on Old Republic's cross-claims for breach of contract, fraudulent misrepresentation, and negligent misrepresentation was against the weight of the evidence.

Old Republic's cross-claims for breach of contract, fraudulent misrepresentation, and negligent misrepresentation are based upon the same factual circumstances. Son signed, on behalf of Rising Phoenix, a final affidavit in connection with the December 13, 2002 sale of the Lake St. Louis Property. The final affidavit was "made for the purpose of aiding Old Republic Title Company of St. Louis, Inc. in determining the marketability and insurability of title to the property, and to induce the Company to issue its policies of title insurance. . . ." The final affidavit contained the following representation: "There are no unrecorded claims against the property, nor any set of facts by reason of which title to the property might be disputed or questioned." The final affidavit subsequently stated: "the affiant states that the foregoing statements are true and correct to the best of affiant's knowledge and belief."

Old Republic argues that the final affidavit constituted a contract that Son and Rising Phoenix breached, and that the representations therein were fraudulently or negligently made. In support of its claim, Old Republic argues that there was an unrecorded claim against the Lake St. Louis Property at the time Son signed the affidavit (the unrecorded Lake St. Louis Deed of Trust), and that there is evidence that Son knew that the Lake St. Louis Deed of Trust was unrecorded.

The trial court's judgment in favor of Rising Phoenix on Old Republic's cross-claims was "[b]ased upon a preponderance of the evidence." The court entered judgment in favor of Son on Old Republic's cross-claims on the stated grounds that Old Republic acknowledged in its post-trial brief that it had no evidence on its claim against *Son* (William Schierholz, III). In fact, Old Republic acknowledged in its post-trial brief that it had no evidence on its claim against *Father* (William Schierholz, Jr.).

The trial court mistakenly found that Old Republic conceded its case against Son rather than Father. However, as noted earlier in our discussion of the standard of review, we are primarily concerned with the correctness of the trial court's result. *Business Men's Assurance Co. of America*, 984 S.W.2d at 506. Thus, even though the reasons advanced by the trial court were wrong, we will affirm the trial court's judgment if it can be supported on a reasonable theory of law in accordance with the evidence. *Id.; Lohrmann*, 657 S.W.2d at 377.

### 1. Breach of Contract

■ The elements that must be proven in order for a party to recover for breach of contract are: (1) the existence of an enforceable contract between the parties; (2) mutual obligations arising under the terms of the contract; (3) one party's failure to perform the obligations imposed by the contract; and (4) the resulting damage to the other party. *McClain v. Papka*, 108 S.W.3d 48, 53 (Mo.App. E.D.2003). If a party fails to prove one of the elements of a breach of contract action, his claim fails. *See Rice v. James*, 844 S.W.2d 64, 69 (Mo. App. E.D.1992) (finding a party was not entitled to judgment in his favor on a breach of contract action when he failed to prove the existence of an enforceable contract between the parties).

■ Assuming *arguendo* that the final affidavit constitutes an enforceable contract between Old Republic and Son and

Rising Phoenix,[9] and that mutual obligations arise thereunder, the trial court could have reasonably found that Old Republic failed to prove that Son and Rising Phoenix did not perform the obligations imposed by the final affidavit.

As previously noted, the final affidavit, signed by Son on behalf of Rising Phoenix represented that: "There are no unrecorded claims against the property, nor any set of facts by reason of which title to the property might be disputed or questioned." The final affidavit subsequently stated: "the affiant states that the foregoing statements are true and correct to the best of affiant's knowledge and belief." Old Republic argues that there was evidence showing that Son would have known, at the time he signed the affidavit, that the Lake St. Louis Deed of Trust was unrecorded. The trial court, however, was not required to believe this evidence. *Lohrmann,* 657 S.W.2d at 377.

Importantly, Son's testimony demonstrates that at the time he signed the affidavit, he did not know that the Lake St. Louis Deed of Trust was unrecorded. Son testified, personally and on behalf of Rising Phoenix that, although he was aware that Midwest Bank had an interest in the Lake St. Louis Property, he believed that the Lake St. Louis Deed of Trust had been recorded. Son specifically testified that he did not have any personal knowledge or belief that the Lake St. Louis Deed of Trust was unrecorded prior to signing the final affidavit at the closing of the Lake St. Louis Property. The trial court could have reasonably found that Son's testimony constituted substantial evidence that his representation in the final affidavit was true and correct *to the best of his knowl-*

*edge and belief,* and that therefore, Old Republic failed to prove that Son and Rising Phoenix did not perform the obligations imposed by the final affidavit. Therefore, the trial court did not err in entering judgment in favor of Son and Rising Phoenix on Old Republic's cross-claim for breach of contract because the trial court could have reasonably found that Old Republic failed to prove one or more of the elements of that claim.

## 2. Fraudulent Misrepresentation and Negligent Misrepresentation

The elements that must be proven in order for a party to recover for fraudulent misrepresentation are: (1) a false material representation; (2) the speaker's knowledge of the falsity of the representation, or ignorance of its truth; (3) the speaker's intent that the hearer act upon the misrepresentation in a manner reasonably contemplated; (4) the hearer's ignorance of the falsity of the misrepresentation; (5) the hearer's reliance on the truth of the representation; (6) the hearer's right to rely thereon; and (7) the hearer's consequent and proximately caused damage. *CADCO, Inc. v. Fleetwood Enterprises, Inc.,* 220 S.W.3d 426, 436 (Mo.App. E.D.2007). The elements that must be proven in order for a party to recover for negligent misrepresentation are: (1) the speaker supplied information in the course of his business; (2) because of the speaker's failure to exercise reasonable care, the information was false; (3) the information was intentionally provided by the speaker for the guidance of limited persons in a particular business transaction; (4) the hearer justifiably relied on the information; and (5) due to the hearer's reliance on the information, the hearer

---

9. The trial court's judgment appears to have treated the final affidavit as if it was a contract between Old Republic and Son and Rising Phoenix. Although we will analyze Old Republic's breach of contract cross-claim in a similar fashion, we are making no findings that such a final affidavit is a contract under the facts of this case or any other case.

suffered a pecuniary loss. *Roth v. Equitable Life Assurance Society of the United States*, 210 S.W.3d 253, 260 (Mo.App. E.D. 2006). If a party fails to prove one of the elements of his claim for fraudulent or negligent misrepresentation, his claim fails. *CADCO, Inc.*, 220 S.W.3d at 436; *Sheppard*, 192 S.W.3d at 523.

When the trial court mistakenly entered judgment for Father, it made the following findings:

> Old Republic knew or should have known of the Lake St. Louis Deed of Trust, and could not have reasonably relied on any representations of Father, who was in a much inferior position to know if the Lake St. Louis Deed of Trust had been recorded. Also, the Court found herein [that] it was Old Republic's duty to record the Lake St. Louis Deed of Trust, therefore, its own negligence was the cause of that Deed of Trust not being satisfied from the sale proceeds of the property.

A reasonable inference from these findings is that the trial court concluded that Old Republic did not have a justifiable right to rely on the representations made in the final affidavit, and that Old Republic did not suffer damages as a result of the representations. Thus, the sixth and seventh elements of fraudulent misrepresentation and the fourth and fifth elements of negligent misrepresentation were not met. Although the trial court made these findings with respect to Father, it could have reasonably found that they also applied to Son and Rising Phoenix.

■ There was evidence that Old Republic did not have a justifiable right to rely on the representations made in the final affidavit in that Son was in an inferior position to know if the Lake St. Louis Deed of Trust was recorded. Son testified on behalf of Rising Phoenix that as a developer, he is not in the business or position of giving opinions to title companies as to whether there are unrecorded claims on properties. Son also testified that the determination of whether a deed of trust is recorded is outside the scope of the day-to-day operations of Rising Phoenix. On the other hand, Forsythe testified that one of the core functions of a title company is to record deeds of trust. Also, Warmoth, Old Republic's title agent at the closing of the Wildwood Property, testified that, "it's pretty clear [from the closing instructions] that [we were] being instructed to record two deeds of trust." And as previously noted in our discussion of the first point on appeal, the trial court implicitly found, based on the circumstantial evidence, that Old Republic had possession of the Lake St. Louis Deed of Trust after closing. Furthermore, we held that Old Republic had a duty to record the Lake St. Louis Deed of Trust. Thus, the trial court could have reasonably found that Old Republic did not have a justifiable right to rely on the representations made by Son and Rising Phoenix in the final affidavit.

■ Additionally, there was evidence that Old Republic's damages were a result of its own negligence. Forsythe testified that if the Lake St. Louis Deed of Trust had been properly recorded, it would have appeared on the real estate records at the time the Lake St. Louis Property was sold. In addition, other intervening deeds of trust on the Lake St. Louis Property had been recorded by the time Rising Phoenix sold the Lake St. Louis Property. The trial court could have reasonably found that these other intervening deeds of trust would have priority status in recovering the proceeds from the sale of the Lake St. Louis Property because the Lake St. Louis Deed of Trust was unrecorded. Because Old Republic had a duty to record the Lake St. Louis Deed of Trust, the trial court also could have reasonably found

that Old Republic's own negligence caused the Lake St. Louis Deed of Trust to not be satisfied from the sale proceeds of the Lake St. Louis Property, rather than Son's and Rising Phoenix's representations.

Thus, the trial court could have reasonably found from the above evidence that Old Republic did not have a justifiable right to rely on the representations made by Son and Rising Phoenix in the final affidavit, and that Old Republic did not suffer damages as a result of those representations. Therefore, the trial court did not err in entering judgment in favor of Son and Rising Phoenix on Old Republic's cross-claims for fraudulent misrepresentation and negligent misrepresentation because the trial court could have reasonably found that Old Republic failed to prove one or more of the elements of each of those claims. Point three is denied.

### III. CONCLUSION

The judgment is affirmed.

ROY L. RICHTER, P.J. and CLIFFORD H. AHRENS, J., concur.